**CITY OF PLANO, Texas, Appellant,**

v.

**PUBLIC UTILITY COMMISSION and MFS Intelenet of Texas, Inc., Appellees.**

No. 03–96–00691–CV.

Court of Appeals of Texas, Austin.

Aug. 14, 1997.

Walter Washington, Butler, Porter, Gay & Day, Austin, for appellant.

Susan Bergen Schultz, Myra A. McDaniel, Jesus Sifuentes, Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P., Austin, for appellee MFS Intelenet of Texas, Inc.

Dan Morales, Attorney General, Andrew S. Miller, Assistant Attorney General, Natural Resources Division, Austin, for appellee Public Utility Commission.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

In an effort to enhance competition in the telecommunications industry, the legislature enacted the Public Utility Regulation Act of

1995 ("1995 PURA").[1] This statute expands the avenues available to companies seeking to provide local exchange telephone service. In lieu of seeking the traditional certificate of convenience and necessity, a utility may now more easily obtain a certificate of operating authority or a service provider certificate of operating authority. This appeal requires us to decide if an applicant for a service provider certificate of operating authority must first obtain, or at least apply for, a franchise from the municipality in which it intends to provide telephone services before the Public Utility Commission may issue the certificate. We will uphold the Commission's ruling that the 1995 PURA imposes no such requirement.

## BACKGROUND

The Commission was created to protect the public interest by regulating rates and services in public utilities dominated by monopolies; regulation by this public agency was intended as a substitute for normal market competition. 1995 PURA § 1.101(a). As technological advances made the telecommunications industry more competitive, the legislature determined to reduce regulation to acknowledge growing competition in the marketplace:

> The legislature finds that the telecommunications industry through technical advancement, federal legislative, judicial and administrative actions, and the formulation of new telecommunications enterprises has become and will continue to be in many and growing areas a competitive industry which does not lend itself to traditional public utility regulatory rules, policies, and principles ...

*Id.* § 3.051(a). Accordingly, Title III of the 1995 Act was enacted to promote diversity of providers and to encourage a more competitive telecommunications marketplace, while guaranteeing quality telephone services at affordable rates. *Id.* § 3.001. The Commission is now required "to do those things necessary to enhance the development of competition by adjusting regulation to match the degree of competition in the marketplace, thereby reducing the cost and burden of regulation and maintaining protection of markets that are not competitive." *Id.* To accomplish this new state policy, the Commission is authorized to promulgate rules and establish procedures that create "appropriate regulatory treatment to allow incumbent exchange companies to respond to significant competitive challenges." *Id.* § 3.051(e)(1).

Under the 1995 Act, the Commission may issue two new types of certificates to telephone utilities: a certificate of operating authority (COA) to utilities that will invest in and use their own facilities, *id.* § 3.2531, and a service provider certificate of operating authority (SPCOA) to utilities that will purchase services from the incumbent local exchange company at a discount and resell them to the public using the incumbent company's facilities. *Id.* § 3.2532. Section 3.2555(a) of the Act requires an applicant for both types of certificates of operating authority to

> file with its application a sworn statement that it has applied for any necessary municipal consent, franchise, or permit required for the type of services and facilities for which it has applied....

*Id.* § 3.2555(a).

In September 1995, MFS Intelenet of Texas applied for a service provider certificate of operating authority to resell local exchange service in an area that includes the City of Plano. It included with its application the following statement:[2]

> **MFSI-TX** does not intend to construct or operate any transmission facilities or to occupy any public rights-of-way or other property, but rather will operate exclusively as a reseller of local exchange services. The applicant therefore believes that no municipal franchises, permits, licenses, or consents are required for its proposed operations.
>
> I, Timothy Devine, attest to the fact that the Applicant has applied for any neces-

---

1. Tex.Rev.Civ. Stat. Ann. art. 1446c—0 (West 1997).

2. The statement was not in the form of an affidavit. However, neither the Commission nor the City of Plano objected that the statement did not comply because it was not a "sworn statement."

sary municipal consent, franchise, or permit required for the types of services and facilities for which it is applying.

The Commission provided the required notice of MFS Intelenet's application to interested parties by publishing the notice, time, and place of the hearing in the *Texas Register*. *See id.* § 3.2531(b); 20 Tex. Reg. 7211, 7212 (Sept. 12, 1995). The City of Plano, a home rule municipality, intervened in the proceedings to contest MFS Intelenet's application on the ground that the Commission could not issue the certificate until MFS Intelenet had obtained municipal consent in the form of a franchise. Over the city's complaints that MFS Intelenet had not applied for a franchise, the Commission granted the application. In its order, the Commission's Finding of Fact 19 stated:

> The Applicant filed an affidavit with its application stating that it applied for all necessary municipal franchises, permits, or consents.

The Commission then issued an Order on Rehearing in which it adopted its prior order and, at Plano's request, added Finding of Fact 20:

> The Commission has not determined the applicant's need for a municipal franchise, consent, or permit.

The Commission also ruled in Conclusion of Law 13 that:

> PURA 95 § 3.2555 does not grant the Commission jurisdiction or authority to determine the necessity of a franchise between a municipality and an SPCOA holder.

After its second motion for rehearing was overruled, Plano sued for judicial review of the Commission's order in district court. The district court affirmed the order.

## DISCUSSION

While the Commission grants public utilities the right to sell their services to the public, home rule municipalities such as Plano are authorized to collect fees from those who use or occupy public streets or rights-of-way with their facilities. Tex.Rev.Civ. Stat. Ann. art. 1175 (West 1996); Tex. Local Gov't Code Ann. § 282.003 (West Supp.1997); Tex. Transp. Code Ann. § 311.071 (West

Supp.1997). Typically these municipal franchise agreements base compensation to the city on a percentage of the telephone company's gross receipts. The 1995 PURA requires an incumbent local exchange company to offer services to the holder of a SPCOA at a discount; if the incumbent company's gross receipts are reduced because of the discount, the city's franchise revenues also will fall. This potential for reduced franchise revenues is at the heart of Plano's concern. Plano complains that if pure resellers of local exchange service such as MFS Intelenet are not required by the Commission to apply for and obtain municipal consent, cities may lose revenues when one of these new certificates of operating authority is issued. Plano argues in five points of error that the Commission violated the 1995 PURA by issuing MFS Intelenet a special provider certificate of operating authority without requiring it to first obtain, or at least apply for, a municipal franchise, consent, or permit.

MFS Intelenet never applied for a franchise from Plano; rather, it determined that, as a pure reseller that would construct no new facilities, it would not need a franchise. MFS Intelenet intended to purchase telephone services at a discount from a local company that had already paid the city a franchise fee for the use of the city's rights of way. Thus MFS Intelenet submitted its sworn statement that it "had applied for any *necessary* consent, franchise, or permit," because it believed no application was necessary. The Commission determined that the utility's sworn statement satisfied the requirement of section 3.2555(a), refusing to require the utility to first apply for and obtain consent or waiver from the city before issuing the certificate.

In its first and fourth points of error, Plano contends the Commission's interpretation of section 3.2555(a) impermissibly allows *the utility* rather than the city to decide whether municipal consent is necessary. Plano insists that section 3.2555(a) is meaningless if it does not require the applicant first to apply for and obtain a franchise or waiver of the requirement by the city.

▮ In construing section 3.2555(a), we give serious consideration to an agency's construction of a statute that it is charged with enforcing, so long as the interpretation is reasonable and does not contradict the plain language of the statute. *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 273 (1944); *Borden, Inc. v. Sharp*, 888 S.W.2d 614, 620 (Tex.App.—Austin 1994, writ denied); *TEXALTEL v. Public Util. Comm'n*, 798 S.W.2d 875, 884 (Tex.App.—Austin 1990, writ denied). This is particularly true where the statute is ambiguous due to the complexity of the subject matter. *TEXALTEL*, 798 S.W.2d at 884. Indeed, if the statute can reasonably be read as the agency has ruled, and that reading is in harmony with the rest of the statute, then the court is bound to accept that interpretation even if other reasonable interpretations exist. *Quorum Sales, Inc. v. Sharp*, 910 S.W.2d 59, 64 (Tex. App.—Austin 1995, writ denied).

▮ Section 3.2555(a) requires the applicant for a certificate of operating authority or service provider certificate of operating authority to file "a sworn statement that it has applied for *any* necessary municipal consent, franchise, or permit required for the type of services and facilities for which it has applied." The Commission's ruling that a sworn statement alone suffices, without proof of applying for or obtaining a franchise, does not contradict the plain language of the statute. The unembellished language of the statute requires no more.

Moreover, there is some indication that the legislature contemplated that municipal consent may *not* be necessary in some cases. Section 3.253 requires applicants for the old certificates of convenience and necessity "to file with the Commission such evidence as is required by the commission to show that the applicant *has received* the required consent, franchise, or permit of the proper municipality or other public authority." 1995 PURA § 3.253(c) (emphasis added). Instead of applying this provision to applicants for the new certificates of operating authority, the legislature enacted section 3.2555(a), requiring only a sworn statement that the applicant has applied for any *necessary* municipal consent. This change evinces legislative in-

tent to make the two new types of certificates easier to obtain and to reduce regulatory burdens in an effort to promote diversity and enhance competition. *See Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 888 S.W.2d 921, 926 (Tex.App.—Austin 1994, writ denied) (when construing a statute, we must attempt to ascertain the legislature's intent). Whether all newly competing telecommunications companies must obtain municipal consent is an issue to be determined in a proceeding between the company and the municipality, not by the Commission. The Commission's interpretation of section 3.2555(a) as requiring only a sworn statement is thus reasonable and consistent with the Act's purpose.

We reject Plano's argument that the purpose of section 3.2555(a) is to provide cities with notice that a utility intends to provide telephone service in the area. The statute already provides for notice to interested parties of applications for certificates through publication in the *Texas Register*. 1995 PURA § 3.2531(b). The fact that Plano intervened in this proceeding demonstrates that it received notice of MFS Intelenet's application even though MFS Intelenet never applied for municipal consent.

The Commission suggests the purpose of section 3.2555(a) is to alert applicants of the need to inquire about municipal consent; Plano rejoins that this purpose was not served because MFS Intelenet never inquired into the municipality's requirements. However, MFS Intelenet's act of self-determination does not persuade us that the legislature intended for the Commission to require all telecommunications companies to apply for municipal consent before seeking a COA or SPCOA. The Act requires the Commission to grant these certificates within sixty days from the date of the application. *Id.* § 3.2532. Not requiring companies to apply in every case will help to expedite applications by allowing companies that do not need municipal consent to submit an affidavit to that effect. This is consistent with the Act's purpose of maintaining a wide availability of services to consumers. *Id.* § 3.001.

In further support of its argument, Plano cites several provisions referring to *the city's*

authority to determine whether municipal consent is necessary. *See id.* § 3.2555(c) & (d) ("Whenever a telecommunications facility holds a consent, franchise, or permit as determined to be the appropriate grants of authority by the municipality ..."); *id.* § 3.2555(f) ("Nothing in this Act shall restrict or limit a municipality's historical right to control and receive reasonable compensation for access to its public streets, alleys, or rights-of-way or other public property."). Plano also contends the Commission's interpretation renders meaningless the right granted certificate holders to charge their customers the fee imposed by a municipality. *See id.* § 3.2555(h).

■ The Commission's interpretation in no way restricts the city's right to regulate the use or occupation of its public rights-of-way consistent with properly enacted city laws. *Southwestern Public Serv. Co. v. Public Util. Comm'n,* 578 S.W.2d 507, 513 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.) (the right granted by the Commission to sell a public utility service is distinct from the right granted by a municipality to use its rights-of-way to provide the services); *Utter v. State,* 571 S.W.2d 934, 936 (Tex.Crim.App.1978) (the issuance of a certificate of convenience and necessity to operate a wrecker in Texas does not preclude a city from regulating its operation within city limits). If a municipality believes that a utility is unlawfully using public rights-of-way, the municipality may seek to enjoin the utility. *See* Tex.Rev.Civ. Stat. Ann. art. 1175(2) (West Supp.1997); *City of San Antonio v. United Gas Pipe Line Co.,* 388 S.W.2d 231, 232 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.); *West Texas Util. Co. v. City of Baird,* 286 S.W.2d 185, 188 (Tex.Civ.App.—Eastland 1956, writ ref'd n.r.e.). A city provides the permission to use its public rights-of-way; enforcement of that permission is not within the Commission's authority.

Furthermore, the Act's provision in section 3.2555(h) for the recovery of municipal fees does not imply that municipalities may charge a fee in every case. While the PURA does not intend to infringe on the historic right of cities to control and receive reasonable compensation for use of its public rights-of-way, neither does it propose to maintain any set *level of compensation* to cities, especially not at the expense of developing competitive telecommunications markets. The Commission's failure to require a franchise before issuing a COA or SPCOA does not preclude Plano's right to require a franchise. We overrule the first and fourth points of error.

■ In its second point of error, Plano contends the Commission's interpretation of section 3.2555(a) "subjects municipalities to charges of discrimination" in violation of section 3.2555(b)(1). That section prohibits discrimination among applicants or holders of certificates of convenience and necessity, certificates of operating authority, or service provider certificates of operating authority

[i]n the granting of consent, franchises, and permits for the use of public streets, alleys, or rights-of-way within its corporate municipal limits ... in relation to:

(1) the authorizing, placement, replacement, or removal of telecommunications facilities within public rights-of-way and the reasonable compensation therefor....

1995 PURA § 3.2555(b)(1). Plano contends that if a company obtaining a SPCOA or COA is allowed to bypass the city's franchise requirement, companies that pay the fee may claim they have been treated unfairly. As the issue of whether a municipality may impose franchise fees on a pure reseller of local service is yet undetermined, Plano cannot complain of being charged with discrimination. Merely treating holders of the various certificates differently does not necessarily constitute discrimination; such a finding would depend on the particular circumstances and rationale underlying the treatment—also issues to be determined in another proceeding. We overrule the second point of error.

■ In its third point of error, Plano contends that sections 3.2555(a) and 3.257 read together imply that the Commission must receive evidence that the utility has obtained municipal consent prior to issuing a certificate. If a telecommunications utility contemplates obtaining but has not yet obtained

municipal consent, section 3.257 allows the Commission to make a preliminary order declaring that it will issue a "certificate" after the utility has obtained municipal consent. The Commission actually issues the certificate when the utility presents evidence that it has obtained the consent. *Id.* § 3.257.

The Commission responds that section 3.257, which predates the 1995 PURA, applies only to certificates of convenience and necessity, not the new certificates of operating authority. It alternatively argues that application of section 3.257 is permissive. Assuming without deciding the provision applies to the new certificates, we find the latter argument has merit.

■ Section 3.257 states that a telecommunications utility *may* apply for a preliminary order and the Commission *may* issue the order. The provision allows utilities to seek approval from both the Commission and the municipality simultaneously to avoid delay. The provision does not force the Commission to require evidence *in every application* that the utility has obtained municipal consent nor does it imply that the utility must have applied to the municipality first in every case. Moreover, MFS Intelenet's position in this case and the legislature's relaxed requirement of only a sworn statement illustrate the potential for situations in which a utility will not be required to obtain consent to provide telephone services to the municipality's residents. Thus, a reasonable construction is that section 3.257 applies only when municipal consent is necessary; it does not require the Commission to receive evidence of municipal consent before it may grant a COA or SPCOA. Because we conclude that the Commission's interpretation of the statute is reasonable, we overrule point of error three.

■ In its fifth point of error, Plano contends Finding of Fact 19 that the utility filed an affidavit with its application stating that it had applied for all necessary municipal franchises, permits or consents is not supported by substantial evidence. The city contends that "an affidavit that states that the applicant believes it needs no municipal consent or franchise is not sufficient evidence for a finding that the applicant has applied for all necessary permits, consents, or franchises."

■ In conducting a substantial evidence review, we must determine whether the evidence as a whole is such that reasonable minds could have reached the conclusion the agency reached. *See Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988), *cert. denied,* 490 U.S., 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 453 (Tex.1984).

In its statement, MFS Intelenet's president attested to his belief that MFS Intelenet had applied for "all necessary municipal franchises, permits, or consents." In light of our holding that the Commission cannot determine the necessity of a municipal franchise and is not required under section 3.2555(a) to determine whether the applicant actually applied to the municipality, there was a reasonable basis upon which the Commission could find that MFS Intelenet's affidavit complied with section 3.2555(a). We overrule the fifth point of error.

## CONCLUSION

■ Because it is reasonable and harmonizes with the stated policy of the 1995 PURA, we uphold the Commission's ruling that section 3.2555(a) does not require a utility applying for a certificate of operating authority or service provider certificate of operating authority to first apply for or obtain any necessary municipal franchise or consent before the certificate may issue. We affirm the judgment of the district court affirming the Commission's order.