TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00556-CV






Power Clearinghouse, Inc., Appellant



v.



Public Utility Commission of Texas, City of Austin, and


Texas Utilities Electric Company, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 96-15342, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING






 Power Clearinghouse, Inc. ("PCI"), appellant, brought suit against the Public
Utility Commission of Texas ("Commission"), appellee, seeking to reverse a Commission
decision refusing to require the City of Austin to provide electric energy transmission service for
PCI. The district court affirmed the Commission's decision. On appeal, PCI asserts in one point
of error that the Commission erred in concluding that the transaction by which PCI proposed to
sell electricity to a third party was not a wholesale transaction. We will affirm the district court's
judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 In May 1996, contending the City was statutorily required to provide electricity
transmission service for a certain proposed transaction, PCI requested that the City quote it
wholesale prices for the transmission of electricity from the Lower Colorado River Authority to
Park Place on the Lake, an apartment complex within the City's certificated service area. PCI
owns no transmission lines or facilities within that service area. The City denied the request,
asserting that the request did not involve a wholesale transaction and that it was not required to
supply service for non-wholesale transactions.

 Park Place on the Lake is a 220-unit apartment complex owned by Lloyd Latham. 
The City owns and maintains the master meter, which measures the volume of electric energy
being used by the entire complex. The City also owns and maintains the 12.47kV primary voltage
line that delivers electricity purchased by Latham from the City. The 12.47kV primary voltage
line connects to a pad-mount transformer, owned and maintained by the City; the transformer
steps the electric voltage down from 12,470 volts to 480Y\277 volts. Latham owns and maintains
the submeters, which measure the volume of electric energy being used in individual apartment
units, and the low voltage facilities on the customer's side of the secondary output on the City's
pad-mount transformer. PCI proposed to purchase electricity from the City and resell it to
Latham.

 In July 1996, PCI filed a complaint with the Commission seeking to require the
City to provide the requested service. The City and Texas Utilities Electric Company intervened
in the suit. On the City's motion, the Commission dismissed the complaint on the basis that the
sale of electricity from PCI to the apartment complex did not involve a wholesale transaction. 
PCI filed suit in Travis County district court for judicial review of the Commission's order. The
district court affirmed the order, and PCI now appeals to this Court.


DISCUSSION

 In 1995, the Texas Legislature mandated open access to wholesale electricity
transmission service in order to promote competition in the wholesale electricity market. It found
that new rules, policies, and principles should be formulated and applied to protect and promote
the public interest in an increasingly competitive marketplace and to encourage the development
of a competitive wholesale electric market that allows for increased participation by both utilities
and certain "nonutilities." See Act of May 24, 1995, 74th Leg., R.S., ch. 765, § 2.01, 1995 Tex.
Gen. Laws 3972, 3988-89 (since codified at Tex. Util. Code Ann. § 31.001(c) (West 1997)).

 One type of nonutility whose participation was sought to be encouraged is the
"power marketer." A power marketer is a person who buys and sells electricity at wholesale. 
Tex. Util. Code Ann. § 31.002(3) (West 1997) ("Utilities Code"). (1) PCI is a power marketer. 
The City of Austin Electric Utility Department is a "municipally owned utility." See id. §
11.003(10). The Commission may require the City to make its facilities available to provide
wholesale transmission to potential competitors. See id. §§ 35.001, .004(a), .005(a). As a power
marketer, PCI is authorized to buy and sell electricity only at wholesale. Id. § 35.031. 
Consequently, if the proposed sale to Latham is not a wholesale transaction, PCI is not authorized
to conduct it, and the City is not required to provide transmission service for it.


PCI's Point of Error

 In its only point of error, PCI contends the district court erred in finding the
proposed transaction between PCI and Latham not to be a wholesale transaction. PCI maintains
that the Utilities Code clearly and unambiguously gives submetering landlords the status of
wholesale customers. The term "wholesale" is not defined in the Utilities Code. The common
definition of wholesale is "the sale of goods or commodities in quantity usually for resale." 
Webster's Third International Dictionary 2611 (Philip B. Gove ed., 1986); see Black's Law
Dictionary 1597 (6th ed., 1990) (a sale in large quantity to one who intends to resell). The
Federal Power Act defines the term as a sale to any person for resale. 16 U.S.C.A. § 824(d)
(West 1985). PCI argues that based on the plain meaning of the word "wholesale," its proposed
transaction with Latham would be a wholesale transaction because Latham was to have resold the
electricity to his tenants.

 PCI asserts that landlords have been permitted to submeter electricity to their
tenants since 1975. See Utilities Code §§ 184.013, .014. PCI contends this submetering
constitutes a resale. PCI's opinion is that Latham's purchase of electricity in bulk and its
distribution over wires to individual apartment submeters that record volume sold for billing
purposes constitutes the resale of electricity. To bolster this position, PCI asserts that the Railroad
Commission considers similar submetering of natural gas by landlords to tenants as a sale or
resale. See 16 Tex. Admin. Code. § 7.46(b), (c) (1997) (any "sale or resale" of natural gas made
by an owner of an apartment house shall be based upon the volume used by the unit plus a
surcharge not to exceed $3.00).

 PCI points to a federal case in support of its position that submetering is reselling. 
The Ninth Circuit has found a municipal airport authority purchasing electricity, most of which
was submetered for resale to commercial tenants at the airport, to be a wholesale customer within
the meaning of the Federal Power Act. See City of Oakland v. Federal Energy Regulatory
Comm'n, 754 F.2d 1378, 1380 (9th Cir. 1985). "[T]he plain meaning of a "resale" seems to
encompass at least the transaction with individually metered tenants. . . . By means of an
extensive system that it owns and maintains, [the municipality] conveys that electricity to tenants
who purchase individually metered amounts. . . ." Id. at 1379. While agreeing that City of
Oakland is not binding on this Court, (2) PCI urges us to follow it as persuasive authority.


The Commission's Order

 The Commission dismissed PCI's request on the basis that PCI had not proposed
electricity transmission service for a wholesale transaction and that the Commission could not
require the City to provide electricity for a non-wholesale transaction. The Commission's order
noted that a determination of whether PCI's proposed sale to Latham was a wholesale transaction
depended on whether Latham's transaction with his tenants was a retail sale. The order stated that
the parties disagree over whether the Legislature intended to treat a submetering transaction that
occurs between landlord and tenant as a retail sale.

 Although Latham is permitted to submeter electricity to his tenants, he is prohibited
by statute from charging any more for the electricity than the utility charges him. Utilities Code
§ 184.014(b)(1). The Commission noted in its order that the inability of a landlord to profit on
the transaction with the tenant made for an atypical situation in which the "seller" does not have
the opportunity to make a profit on the transaction. Although under some circumstances, a seller
may choose to sell property at a loss and still qualify as a seller, in the present case the statute
precludes a landlord from profiting in the transaction.

 In addition, the Commission pointed out that the landlord's use of some of the
electricity in common areas of the apartment complex also blurred the distinction between
wholesale and retail. Retail, the flip-side of wholesale, is not defined in the Utilities Code, but
its common meaning focuses on whether the product is sold to the ultimate consumer or end-user. 
See Black's Law Dictionary 1315 (6th ed., 1990). Even if, under the present circumstances, the
landlord were not considered the end-user of the electricity that is furnished through the tenants'
submeters, the electricity used in the common areas of the complex would clearly not be for resale
to individual tenants. Thus, the landlord would be the end-user at least of that electricity. Power
marketers are not authorized to make retail sales of electricity. See Utilities Code § 35.031. 
Therefore, the Commission argues, electricity consumed in the common areas is not purchased
for resale, and PCI is not authorized by statute to sell at least this portion of electricity to Latham.

 The Commission did not find City of Oakland to be persuasive. It distinguished
the case on four bases: (1) the airport authority was a municipality and Latham is not; (2)
Latham's submetering scheme does not rise to the level of the "extensive system for transferring
and metering electricity" present in Oakland; (3) the airport had a profit motive while Latham is
statutorily prohibited from profiting from submetering; and (4) the transaction here is governed
by Texas rather than federal law.

 The Commission's order also discussed another case presented by the parties. In
City of Palm Springs, 76 FERC 61,127 (1996), the Federal Energy Regulatory Commission
concluded that, for federal purposes, the delivery of power through submeters is not sufficient to
establish a wholesale transaction because a submeter is merely a measuring and billing device that
does not by itself accomplish the physical delivery of power. Id. at 61,702. In the present case,
the Commission found that Latham owned facilities from the "pad-mounted transformer to the
electrical outlets in each dwelling unit." While the Commission found this to be more extensive
than the system in City of Palm Springs, it was not as extensive as the system in City of Oakland.

 Based on the circumstances of the present case, the Commission concluded that
Latham's facilities did not rise to the level of an extensive system for transferring and metering
electricity, and it was not persuaded to believe Latham's proposed purchases would be at
wholesale.


The City's Arguments

 The City argues for an affirmance of the Commission's order and raises additional
issues in support of the Commission's conclusion. First, the City contends the Commission's
authority to require an electric utility to provide transmission service is discretionary and only
applies to wholesale transactions between a provider of generation and an electric utility, a
qualifying facility, an exempt wholesale generator, or a power marketer. See Utilities Code
§§ 35.002, .005. Because Latham is not one of these entities, the City asserts that the
Commission cannot require it to provide transmission service to Latham.

 The City also argues that while wholesale generators and power marketers are
recognized in statutes as participants in the wholesale power market, there is no express statutory
recognition of landlords of submetered apartment houses as wholesale middlemen. See Utilities
Code § 35.002. Drawing a distinction between "furnishing" and "selling" electric energy, the
City contends that while a landlord is exempt from utility regulation when "furnishing" tenants
with electricity, if the landlord is "selling" electricity to the tenants as PCI suggests, then the
landlord is subject to utilities regulation and must obtain proper certification from the Commission
for such a transaction. See Utilities Code § 31.002(1)(F)(i). Furthermore, the City maintains,
PCI's position that landlords have been allowed to resell electricity to their tenants since 1975
would mean that Texas utilities have erroneously been charging submetered apartments retail rates
for more than twenty years.

 The City next suggests that a landlord may submeter costs of electricity only when
the electricity is provided by a utility. See Utilities Code § 184.014(b)(1). Because PCI is a
power marketer and not a utility, the City asserts that the statute prohibits the landlord from
obtaining wholesale electric energy from PCI. This is important because tenants are protected in
the price they pay for electricity by the requirements that a landlord may only pass through the
charges made by the utility, regulated here by an elected city council, rather than being at the
mercy of the landlord and its unregulated supplier.

 Finally, the City directs our attention to the "Dobie Mall" case, in which this Court
addressed the statutory term "dominant carrier." See Southwestern Bell Tel. Co. v. Public Util.
Comm'n, 745 S.W.2d 918, 924 (Tex. App.--Austin 1988, writ denied). The term was not defined
in the relevant act, nor did it have an accepted meaning in the context in question. The term was
crucial to the administration of the regulatory scheme the Commission was empowered to execute. 
We concluded that the legislature by necessary implication intended for the Commission to have
discretion to assign meaning to the term. We found the Commission's definition of the term
reasonable and affirmed its order. Id.


Standard of Review and its Application

 The standard for reviewing an agency's legal determination is de novo. In Re
Humphreys, 880 S.W.2d 402, 404 (Tex. 1994); Firemen's Pension Comm'n v. Jones, 939 S.W.2d
730, 735 (Tex. App.--Austin 1997, no writ). We give serious consideration to an agency's
construction of a statute that the agency is charged with enforcing, so long as the interpretation
is reasonable and does not contradict the plain language of the statute. Tarrant Appraisal Dist.
v. Moore, 845 S.W.2d 820, 823 (Tex. 1993); City of Plano v. Public Util. Comm'n, 953 S.W.2d
416, 421 (Tex. App.--Austin 1997, no writ).

 Under the facts of the present case, we believe the Commission's interpretation of
the term "wholesale" is reasonable and does not contradict the plain meaning of the statute. 
Accordingly, we give serious consideration to that construction. We are not persuaded by PCI's
argument that Latham's submetering of electricity to his tenants is a resale of electricity rather
than a mere allocation of costs. Considering the statutory prohibition on profiting from
submetering, the limited nature of Latham's electricity transmission system, and the blurring of
the distinction between resale and wholesale by use of electricity in the apartment's common
areas, we conclude that the proposed transaction between PCI and Latham is not a wholesale
transaction. Appellant's point of error is overruled. Because we affirm the Commission's
decision based on grounds stated in its order, we need not address the additional arguments and
issues raised by the City.


CONCLUSION

 Having overruled appellant's point of error, we affirm the district court's judgment.



 

 J. Woodfin Jones, Justice

Before Justices Aboussie, Jones, and Kidd

Affirmed

Filed: April 30, 1998

Publish

1.   In addition, a power marketer does not own generation, transmission, or distribution facilities
in Texas, does not have a certificated service area, and must have either federal or state approval to
operate as a power marketer. Id.
2. A large portion of Texas, including the City of Austin, receives electricity off an isolated
interconnected grid called the Electric Reliability Council of Texas ("ERCOT"), which flows only
in Texas and is apparently deemed not to be in interstate commerce. Therefore, the Texas Public
Utility Commission, rather than the Federal Energy Regulatory Commission, has complete
jurisdiction over transactions within ERCOT.


n "furnishing" tenants
with electricity, if the landlord is "selling" electricity to the tenants as PCI suggests, then the
landlord is subject to utilities regulation and must obtain proper certification from the Commission
for such a transaction. See Utilities Code § 31.002(1)(F)(i). Furthermore, the City maintains,
PCI's position that landlords have been allowed to resell electricity to their tenants since 1975
would mean that Texas utilities have erroneously been charging submetered apartments retail rates
for more than twenty years.

 The City next suggests that a landlord may submeter costs of electricity only when
the electricity is provided by a utility. See Utilities Code § 184.014(b)(1). Because PCI is a
power marketer and not a utility, the City asserts that the statute prohibits the landlord from
obtaining wholesale electric energy from PCI. This is important b