# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00053-CV

**The State of Texas, Appellant**

**v.**

**Public Utility Commission; Oncor Electric Delivery Company; TXU Energy Retail Company, LP; Mutual Energy CPL, LP; Mutual Energy WTU, LP; and Reliant Energy Retail Services, LLC, Appellees**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. GV200291, HONORABLE MARGARET COOPER, JUDGE PRESIDING

## O P I N I O N

As part of the shift to deregulation in the electricity industry, the legislature has mandated that retail electric providers that are affiliated with formerly regulated utilities charge a special discounted rate, known as the "price to beat," to certain classes of their customers. The same legislation that establishes the price to beat also extends for several years a twenty-percent rate discount that was available under regulation to state-funded four-year universities, upper-level institutions, technical colleges, and colleges (collectively "State Colleges"). The State of Texas[1]

---

[1] In the proceedings relevant to this appeal, the State of Texas was operating by and through the Office of the Attorney General, Consumer Protection Division, Public Agency Representation Section.

intervened on behalf of the State Colleges in several Public Utility Commission proceedings in which retail electric providers were attempting to establish their price-to-beat rates. The State argued that the State Colleges were entitled to both discounts. The Commission disagreed, ruled against the State in a certified question, and incorporated its ruling into all of its price-to-beat proceedings. The State then sought judicial review of the Commission's orders.[2] The cases were consolidated and the district court affirmed. Because we find the Commission's interpretation of the statutes reasonable, we affirm the district court's judgment affirming the Commission's orders.

## BACKGROUND

In 1975, the legislature enacted the Public Utility Regulatory Act (PURA) creating the Public Utility Commission and establishing a comprehensive regulatory regime for electric utilities. Under the regulated system, a single vertically integrated utility would generate electricity, build and maintain a distribution grid, and sell electricity to consumers in a particular area. In 1999, the legislature passed Senate Bill 7, which amended PURA and partially deregulated the industry. As part of deregulation, each electric utility was required to "unbundle" into the following entities: a power generation company, a retail electric provider, and a transmission and distribution utility. *See* Tex. Util. Code Ann. § 39.051(b) (West Supp. 2003). The power generation and retail markets

---

[2] In addition to the Commission, several electric providers that were parties to the proceedings are also appellees in this case. They include: Oncor Electric Delivery Company; TXU Energy Retail Company, LP; Mutual Energy WTU, LP; Mutual Energy CPL, LP; and Reliant Energy Retail Services, LLC. Because their arguments are substantially the same as the Commission's, we will treat them together.

2

are eventually to be governed by "customer choices and the normal forces of competition," while the Commission will continue to regulate transmission and distribution utilities. *See id*. § 39.001(a) (West Supp. 2003).

When the unbundled entities that once comprised a regulated utility continue to be held by a common holding company, the resulting retail electric provider is known as an affiliated retail electric provider. *See id.* §§ 39.002(b), .051(c), .202 (West Supp. 2003). By contrast, a retail electric provider that is not part of a formerly regulated utility held in a common holding company is known as a nonaffiliated retail electric provider, or a competitive retail electric provider. *See id.* §§ 39.051(c), .202; *Office of Pub. Util. Counsel v. Public Util. Comm'n*, No. 03-02-566-CV, slip op. at 4, 2003 Tex. App. LEXIS 3056, at *6 (Tex. App.—Austin Apr. 10, 2003, no pet. h.). When deregulation is fully implemented, the rates charged by both types of providers will be determined by the market. However, because an affiliated retail electric provider begins competition with a massive competitive advantage in the form of an inherited customer base, the legislature enacted section 39.202 of the utilities code to facilitate market entry by nonaffiliated retail electric providers.

Section 39.202 provides for a transition period during which affiliated retail electric providers are required to provide service to residential and small commercial customers at a discount. *See* Tex. Util. Code Ann. § 39.202(a) (West Supp. 2003). This rate is called the "price to beat," and is to be set by the Commission at "six percent less than the affiliated electric utility's corresponding average residential and small commercial rates . . . in effect on January 1, 1999." *Id*. Affiliated retail electric providers are required to "make available" the price to beat to qualifying

3

customers from January 1, 2002, the first day of competition, until January 1, 2007. Moreover, these providers cannot charge rates that are "different from the price to beat," *i.e.*, lower than the price to beat, until the earlier of January 1, 2005, or the date that "the commission determines that 40 percent or more of the electric power consumed by [qualifying customers] is committed to be served by nonaffiliated retail electric providers." *See id.* § 39.201(e) (West Supp. 2003).

Four years earlier, in 1995, when retail electric service was still fully regulated, the legislature had enacted section 36.351 of the utilities code, which required all utilities to provide to the State Colleges "a 20-percent reduction of the utility's base rates that would otherwise be paid under the applicable tariffed rate." *See id.* § 36.351 (West 1998). The 1999 deregulation legislation includes a provision to preserve this regulated twenty-percent discount for the State Colleges. Uncodified section 63 of Senate Bill 7 requires affiliated retail electric providers to continue for a period of almost six years to offer electric service to the State Colleges "as provided by section 36.351, . . . at a total rate that is no higher than the rate applicable to [the State Colleges] on December 31, 2001 [*i.e.*, the final day of regulation]." Act of May 27, 1999, 76th Leg., R.S., ch. 405, § 63, 1999 Tex. Gen. Laws 2543, 2625.

In June 2001, several affiliated retail electric providers filed applications with the Commission to establish their price-to-beat rates. *See* 16 Tex. Admin. Code § 25.41 (2003). Each of these cases was referred to the State Office of Administrative Hearings for assignment to an Administrative Law Judge (ALJ). The State intervened in each proceeding, on behalf of "State agencies and institutions . . . [that] are price-to-beat customers," and asked that the ALJ set a briefing

4

schedule to address the question of whether the affiliated retail electric providers' applications "appropriately reflected the discount to [the State Colleges] as required by section 63 of Senate Bill 7." The ALJ then certified to the Commission the following question: "Whether [the State Colleges]—on accounts that otherwise qualify for the price to beat rate—are entitled to both the price to beat rate reduction and the twenty percent discount, provided by PURA and SB 7."

Following submission of briefs by parties to the affected proceedings, the Commission considered the certified question at an open meeting and ruled that the State Colleges were not entitled to both the price-to-beat rate reduction and the twenty-percent discount. The Commission's ruling was then incorporated into the final orders in each of the price-to-beat proceedings.

The State sought judicial review of the Commission's final orders in Travis County district court, claiming that the Commission erred in ruling that the State Colleges were not entitled to both discounts. *See* Tex. Util. Code Ann. § 15.001 (West 1998); Tex. Gov't Code Ann. §§ 2001.171, .176(b)(1) (West 2000). The cases were consolidated and the district court affirmed the Commission's orders.

## DISCUSSION

### Section 63

This case presents us with competing interpretations of the relationship between section 63 and two other PURA provisions. The State claims that the legislature intended the State Colleges to receive both the traditional twenty-percent discount and the new price-to-beat rate

5

reduction, while the Commission and the affiliated retail electric providers claim that the legislature intended to preserve a subsidized discount of twenty percent for the State Colleges rather than subject them to the competitive market with its less favorable price-to-beat reduction of six percent.

Our goal in interpreting PURA is to ascertain and give effect to the legislature's intent. *See Southwestern Bell Tel. Co. v. Public Util Comm'n*, 31 S.W.3d 631, 637 (Tex. App.—Austin 2000), *aff'd*, 92 S.W.3d 434 (Tex. 2002). We do so first by looking at the plain language that the legislature used. *Id.* However, if this language is reasonably susceptible to more than one meaning, we give serious consideration to the Commission's construction, as PURA is a statute which the Commission is charged to enforce. *See id.* at 639; *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 79 S.W.3d 226, 228 (Tex. App.—Austin 2002, no pet.); *City of Plano v. Public Util. Comm'n*, 953 S.W.2d 416, 421 (Tex. App.—Austin 1997, no pet.). If the provisions at issue in this case can reasonably be read as the Commission has ruled, and that reading is in harmony with the rest of PURA, then we will accept that interpretation even if other reasonable interpretations exist. *City of Plano*, 953 S.W.2d at 421; *see Southwestern Bell*, 79 S.W.3d at 228.

In 1995, four years before the enactment of Senate Bill 7 and the creation of the price-to-beat mechanism, the legislature enacted section 36.351 of the utilities code to provide to the State Colleges a twenty-percent discount off the base rates they would otherwise be charged. The section specifically provides:

> (a) Notwithstanding any other provision of this title, each electric utility and municipally owned utility shall discount charges for electric service provided to a facility of a [State College].

6

(b) The discount is a 20-percent reduction of the utility's base rates that would otherwise be paid under the applicable tariffed rate.

Tex. Util. Code Ann. § 36.351.

In the new competitive regime, a retail electric provider, as opposed to an "electric utility," will provide electric service to State Colleges located in areas open to retail competition. *See id.* § 31.002(6) (West Supp. 2003) (term "electric utility" does not include "a retail electric provider"). To ensure that the colleges would continue to receive the twenty-percent discount they had received under regulation, the legislature enacted section 63 of Senate Bill 7, which specifically provides:

> Notwithstanding any other provision of this Act or Title 2, Utilities Code, any person or entity that provides electric service to [the State Colleges], as provided by section 36.351, Utilities Code, on December 31, 2001, shall continue to offer service to [the State Colleges] as provided by section 36.351, Utilities Code, until September 1, 2007, at a total rate that is no higher than the rate applicable to [the State Colleges] on December 31, 2001. The rate applicable to [the State Colleges], as provided by Section 36.351, Utilities Code, on December 31, 2001, shall be based on the rates provided for or described in Section 36.351, Utilities Code. However, a person or entity that is not an electric cooperative or municipally owned utility that provides electric service to [the State Colleges], as provided by Section 36.351, Utilities Code, shall be allowed to adjust its fuel factor as provided by Subsection (l), Section 39.202, Utilities Code, as added by this Act.

Act of May 27, 1999, 76th Leg., R.S., ch. 405, § 63, 1999 Tex. Gen. Laws 2543, 2625. Section 63 can be contrasted with the price-to-beat section of Senate Bill 7, which generally requires affiliated retail electric providers to provide electric service to residential and small commercial customers at a rate "six percent less than the affiliated electric utility's corresponding average residential and small commercial rates . . . in effect on January 1, 1999." Tex. Util. Code Ann. § 39.202(a).

In its first point of error, the State argues that the plain language of the three statutes entitles the State Colleges to both discounts. Specifically, it claims that the State Colleges are not expressly excluded from the price-to-beat provision, that "no one disputes that the residential and small commercial accounts of [the State Colleges] were already receiving, on January 1, 1999, a rate discounted by twenty percent," and therefore that "the rate effective on January 1, 1999 must be discounted by an additional six percent to arrive at the price-to-beat rate for State Colleges which happen to qualify as residential or small commercial accounts." The State claims that this interpretation does not conflict with section 63 because the rate arrived at will be "no higher than the rate applicable to [the State Colleges] on December 31, 2001." *See* Act of May 27, 1999, 76th Leg., R.S., ch. 405, § 63, 1999 Tex. Gen. Laws 2543, 2625. The Commission responds that the State's interpretation disregards the phrase "[n]otwithstanding any other provision . . ." in sections 36.351 and 63, as well as other material language contained in the provisions. The Commission also claims that its reading of the provisions is reasonable and therefore entitled to deference. We agree with the Commission that it has reasonably read the relevant provisions and we will therefore defer to its interpretation.

When the legislature enacted Senate Bill 7, it changed the structure of the electrical-power industry, and thereby the nature of the rates that would be applicable to the State Colleges in areas of Texas open to competition. By making continued application of the twenty-percent discount mandatory, the legislature ensured that the State Colleges would continue to receive the discounted and subsidized rates, thereby insulating them from the onset of competition which would otherwise afford them the much lower six-percent price-to-beat reduction. The Commission reasonably

8

concluded that the legislature sought to benefit the State Colleges by preserving the more favorable twenty-percent discount from the prior regulatory scheme instead of granting them the six-percent discount guaranteed in the competitive market by the price-to-beat mechanism.

Section 63 accomplishes this favorable treatment of State Colleges by imposing a cap on the price that they are required to pay their affiliated retail electric provider at an amount "no higher than the rate applicable . . . on December 31, 2001." *See id.* The State argues that this language can be reconciled with section 39.202 by applying the price-to-beat discount of six percent to the already discounted rate for the State Colleges that was in effect on January 1, 1999. The State complains that the Commission erroneously reads the words "no higher than" to mean "the same as," while the State's reading of the language easily accommodates applying an additional six-percent discount to the twenty-percent discount in effect in 1999 because the resulting rate will be "no higher than" the rate in effect on December 31, 2001. However, the State disregards the fact that section 63 explicitly mandates that the State Colleges' rates "shall be based on the rates provided for or described in Section 36.351, Utilities Code." After laying out this express mandate, section 63 is entirely silent about any additional price-to-beat adjustment. The Commission explains that section 63's language "'no higher than' the rate applicable to [the State Colleges] on December 31, 2001," means that although an affiliated retail electric provider must make electric service available to the State Colleges at the same rate that was in effect in December 2001, a State College *may nonetheless bargain for a lower rate*. The Commission's reading is more reasonable.

We also note that although the meaning of the "notwithstanding" language contained in the provisions is less than clear, it too favors the Commission's reading. Section 36.351, the

9

provision initially providing the twenty-percent discount, is to operate "notwithstanding any other provision of this title"[3]; likewise, Section 63 is to operate "[n]otwithstanding any other provision of this Act or Title 2." As the Commission points out, the word "notwithstanding" means "despite" or "in spite of." *Black's Law Dictionary* 1091 (7th ed. 1999). The Commission argues that this language indicates that the twenty-percent discount provided for in sections 36.351 and 63 is to operate without regard to the price-to-beat reduction provided for in section 39.202. The State responds that the term "notwithstanding," by its very nature, refers to something "to the contrary," and that the legislature therefore intended section 63 to apply to the extent that there are no conflicts with other provisions in the statute or other laws.[4] In other words, the State would have us add three words, "to the contrary," to the statutory phrase "notwithstanding any other provision of this act." The Commission's position is that the sections providing the twenty-percent discount are to operate notwithstanding any other provision of PURA *including*, *e.g.*, provisions dealing with similar subject matter. We hold that the Commission's interpretation, that the "notwithstanding" language indicates that the twenty-percent discount is to operate exclusive of the price-to-beat reduction, is more reasonable.

The Commission, in its interpretation of section 63, reasonably concludes that the legislature intended to maintain the higher, preexisting, regulatory discount for State Colleges. In refusing to apply the competitive price-to-beat reduction in addition to this discount, the Commission

---

[3] "[T]his title" refers to Title Two of the utilities code, which contains the codified version of PURA. *See* Tex. Util. Code Ann. § 36.351 (West 1998).

[4] The State has failed to point us to specific conflicting provisions of PURA that the legislature might have been concerned about.

10

could have decided that a rate subsidy held over from the days of comprehensive regulation—*i.e.*, the twenty-percent reduction—should not be combined with a rate reduction that is intended to initiate competition in a deregulated system—*i.e.*, the price to beat. This conclusion is undoubtedly reasonable and deserving of our deference. We overrule the State's first point of error.

### Rule 25.41(f)(1)(C)

In its second point of error, the State argues that the Commission failed to comply with the requirements of its own substantive rule 25.41(f)(1)(C). The rule provides that:

> An electric utility, on behalf of its future affiliated [retail electric provider] shall file . . . price to beat tariffs and supporting workpapers for the price to beat rate developed in accordance with . . . [other portions of this rule]. At the time of this filing, the affiliated [retail electric provider] may request that a price to beat rate not be developed from a particular rate of service rider along justification for the request. The electric utility shall provide notice to all customers currently taking service under such rates or service riders of the utility's request.

16 Tex. Admin. Code § 25.41(f)(1)(C) (2003). The State argues that "[a]bsent any evidence justifying the exclusion of State Colleges from the Price to Beat rate reductions, both the statute and the rule require that the January 1, 1999 base rates be reduced by 6%."

This issue presents a question of law. *See BFI Waste Sys., Inc. v. Martinez Envtl. Group*, 93 S.W.3d 570, 575 (Tex. App.—Austin 2002, pet. filed). Rule 25.41(f)(1)(C) allows affiliated retail electric providers to request development of rates using different methods and different criteria than the price-to-beat requirements set out in section 39.202. However, it only applies to rates that would otherwise be subject to price-to-beat restructuring—*i.e.*, the rates of residential and small commercial customers that are not statutorily exempt from the price-to-beat rate

11

requirement.  Certain service classes are exempt from the price-to-beat rate requirement—*i.e.*, large commercial customers, industrial customers, and, pursuant to section 63 of Senate Bill 7, the State Colleges.  The rule does not require providers to justify not developing a price-to-beat for customers who are otherwise exempt.  We overrule the State's second point of error.

*Delegation*

In its third and final point of error, the State argues that the Commission impermissibly delegated to its staff the decision on the certified question.  The essence of its claim is that "[i]t . . . appears that, rather than deciding this question of law by reading and evaluating the parties' briefs for themselves, the Commissioners simply adopted a 'briefing order' or 'recommendation' prepared by the [Commission's] Policy Development Division."  To support this argument, the State primarily relies on the "textual congruence" between the Commission's final order and its staff's recommendation.

Power of decision resides in the Commission and not in its staff, which exists to serve the agency.  *See City of Frisco v. Texas Water Rights Comm'n*, 579 S.W.2d 66, 72 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.).  Staff recommendations may be accepted in whole or in part by the Commission.  *See id.*  It is the order of the Commission, not the recommendation of the staff, that is reviewed by courts.  *See id.*  Moreover, in reviewing the Commission's order we do not invade the thought processes of the commissioners or speculate about their individual motivations. *See id.*; *West Tex. Util. Co. v. Office of Pub. Util. Counsel*, 896 S.W.2d 261, 272 (Tex. App.—Austin 1995, no writ).

12

In this case, the Commission accepted the recommendations of its staff—a reasonable exercise of its discretion. We refuse to speculate about the thought processes or work habits of the commissioners. The State's third point of error is overruled.

## CONCLUSION

We defer to the Commission's interpretation that section 63 of Senate Bill 7 preserves for the State Colleges a twenty-percent discount rate that is not to be cumulated with the six-percent discount rate afforded by the price-to-beat mechanism. Having overruled all issues on appeal, we affirm the district court's judgment affirming the Commission's orders.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: June 12, 2003

13