Alice T. BISKAMP, Appellant,

v.

GENERAL CRUDE OIL COMPANY et al.,
Appellees.

No. 14837.

Court of Civil Appeals of Texas,
San Antonio.

March 11, 1970.

Rehearing Denied April 8, 1970.

Cox, Smith, Smith, Hale & Guenther, Terry S. Bickerton, San Antonio, for appellant.

Andrews, Kurth, Campbell & Jones, Houston, Homer E. Dean, Jr., Alice, for appellees.

BARROW, Chief Justice.

Appellant, Alice T. Biskamp, joined by the other owners of the one-eighth royalty under an oil and gas lease known as the Taylor Lease, brought this suit to recover damages from appellees, General Crude Oil Company, Ashland Oil & Refining Company, and Carrl Oil Company, for breach of certain covenants and conditions in said lease by underproducing plaintiffs' well. The question presented is whether the Railroad Commission or the court has primary jurisdiction of this case. The trial court concluded that the Railroad Commission has exclusive original jurisdiction and accordingly dismissed this suit for want of jurisdiction. This appeal has been duly perfected by Alice T. Biskamp.

On July 27, 1958, appellant's predecessor executed an oil and gas lease to certain described property in Brooks County, Texas, which leasehold estate is now owned by appellees. During the period from December, 1964, through July, 1966, appellee General Crude Oil Company was the operator of seven gas wells which were producing from the same reservoir in the Vicksburg Formation in the Loma Blanca Gas Field of Brooks County. Included in said seven wells is the Isadore Means Taylor No. 1, in which appellant owns an interest, and two wells in which appellees own a part of the landowners' one-eighth royalty in addition to their leasehold interest. During the period in controversy there were no field rules in effect in

the Loma Blanca Field. Thus, pursuant to Railroad Commission Rule 29, the allowable production for each well in the field was 25% of its potential capacity.[1] However, because of a lesser market demand, none of the seven wells produced its allowable. During this time appellees produced approximately an equal amount of gas and distillate from four different wells which were located on different leases within the field, including the Taylor No. 1 and the two wells of which appellees were also royalty owners. Although approximately equal amounts of gas and distillate were taken from these four wells, the open flow potential of the Taylor No. 1 was substantially greater than any of the other wells.

Appellant does not contend that Rule 29 required appellees to take the full 25% of open-flow potential, but asserts the gas and distillate should have been taken from each of the seven wells in this reservoir in the same relative percentage that the open-flow potential of each of these wells was to the market demand. It is alleged that appellees violated the lease agreement to produce Taylor's fair share by taking a smaller percentage of such well's open-flow potential than was taken from the wells in which appellees have a royalty interest. Recovery was sought for damages for violation of such express and implied covenants of the lease agreement.

While we have found no case where the precise question presented here was determined, the question of primary jurisdiction has been considered in other oil and gas cases. In Gregg v. Delhi-Taylor Oil Corp., 162 Tex. 26, 344 S.W.2d 411 (1961), the Supreme Court set forth the theory of "primary jurisdiction" as follows: "That theory is that when the Legislature has delegated the power to an administrative body to regulate a particular industry or business, the courts may not or will not interfere until the board or bureau has had

an opportunity to pass upon the matter and has remedied, or attempted to remedy, the situation." This test was adopted: "Where the issue is one inherently judicial in nature (as we think the question of trespass is), the courts are not ousted from jurisdiction unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body." It was held that the courts have jurisdiction to ascertain whether there is a trespass and to enjoin it if there is, since these questions are primarily judicial in nature.

In Foree v. Crown Central Petroleum Corporation, 431 S.W.2d 312 (Tex.Sup. 1968), the Court, after recognizing the general rule[2] that primary jurisdiction of the administrative agency is tested by whether some parts of the case are within the exclusive jurisdiction of the agency, added the following exception to such rule: "when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief." The Court expressly reserved the problem presented by a case in which the agency is powerless to grant the relief sought, but does have the authority to make incidental findings which are essential to the granting of the relief. It was held "that the Commission does not have authority, and cannot have exclusive primary jurisdiction, to make findings of discrimination in a particular case when the alleged discrimination no longer exists and official action by the Commission is thereby mooted."

It is beyond argument that Art. 6008, Vernon's Ann.Civ.St., gives the Railroad Commission authority to regulate gas fields. Section 10 thereof provides that the Commission shall prorate and regulate the daily gas well production from each common reservoir for the protection of public and private interests in the prevention of

---

1. Rule 29 applies statewide until field rules are adopted by the Commission for a particular field.

2. See Davis, Administrative Law Text, Sec. 19.07 (1958).

waste and in the adjustment of correlative rights. Sections 11–13 provide the procedures to be followed in setting the daily allowable for each gas well where the potential capacity of the wells in a common reservoir exceeds the market demand for gas from such reservoir. See Vol. 21 S.W.L.J. 368, Oil & Gas—Proration—Railroad Commission's Authority to Protect Correlative Rights; Railroad Commission of Texas v. Woods Exploration & Producing Co., 405 S.W.2d 313 (Tex.Sup.1966); Atlantic Refining Co. v. Railroad Commission of Texas, 162 Tex. 274, 346 S.W.2d 801 (1961).

Appellant's suit does not allege that appellees violated any order of the Railroad Commission, nor does appellant seek any allocation or proration order by this suit. It is conceded that the production from each of the wells in this field was within the allowable production of 25% of open-flow potential. The specific rules for this field were not placed into effect by the Commission until after the period in controversy. Appellant asserts that before such rules were placed into effect for this field appellees breached the lease agreement by not producing the fair share of gas and distillate from the Taylor well in relation to the other wells in this field and particularly those in which appellees had a royalty interest. Clearly, the interpretation of a lease contract is not within the jurisdiction of the Commission.

A somewhat similar situation was presented in Zimmerman v. Texaco, Inc., 409 S.W.2d 607 (Tex.Civ.App.—El Paso 1966, writ ref'd n. r. e., 413 S.W.2d 387). This was an oil drainage case wherein the owner of a mineral interest alleged that defendant had not taken the proper amount of oil from her tract as compared to the adjoining tracts. The Court of Civil Appeals, with one Justice dissenting, held that the trial court correctly determined that it had no jurisdiction. The dissenting Justice said that the trial court had jurisdiction in that suit for money damages, which suit did not seek to alter or challenge the validity of an order of the Commission. The Supreme Court in a Per Curiam opinion held simply that the trial court had jurisdiction of the cause. However, the application for writ of error was refused, no reversible error, since no reversible error was shown in the action of the Court of Civil Appeals in affirming the take-nothing judgment.

We conclude that appellant's cause of action, for construction of the lease contract and money damages for breach thereof, is essentially judicial in nature. The trial court erroneously concluded that it did not have jurisdiction in this cause.

The judgment of the trial court is reversed and the cause remanded for trial on the merits.