**CENTRAL POWER AND LIGHT COMPANY, Appellant,**

**v.**

**PUBLIC UTILITY COMMISSION OF TEXAS; and Cities of San Juan, Pharr, and San Benito, Appellees.**

**No. 03–99–00204–CV.**

Court of Appeals of Texas, Austin.

May 4, 2000.

Thomas S. Leatherbury, Michael J. Tomsu, Vinson & Elkins L.L.P., Dallas, for Central Power & Light Co.

Amanda Atkinson Cagle, Assistant Attorney General, Natural Resources Division, Austin, for PUC of Texas.

Jim Boyle, Boyle & Bender, Austin, for Cities of San Juan, Pharr and San Benito.

Before Chief Justice ABOUSSIE, Justices JONES and POWERS.*

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

JOHN E. POWERS, Justice (Retired).

Central Power and Light Company (the "Company"), a regulated public utility, appeals from a district-court judgment affirming the final order of the Public Utility Commission (the "Commission") in a suit brought by the Company for judicial review of that order, as authorized by section 1.301 of the Public Utility Regulatory Act ("PURA"). *See* Tex. Util.Code Ann. § 1.301 (West 1998).[1] The municipalities of San Juan, Pharr, and San Benito intervened in the suit in defense of the Commission's final order and have filed on appeal a joint brief. We will affirm the district-court judgment.

## THE CONTROVERSY

The Company furnishes electric power to customers in a number of Texas municipalities and has entered into contracts with numerous home-rule cities.[2] By such contracts, the Company has obtained the use of city streets, alleys, highways, and public grounds for Company facilities. In compensation, the contracts require the Company to pay "franchise fees" to the cities in amounts fixed by the contracts or by city ordinances.

For a number of years, the Company paid the franchise fees in accordance with the contracts and ordinances. The Company, in turn, recouped the expense indirectly from its customers as one of the "reasonable and necessary operating expenses" that the Company is entitled to recover by and through its electric-service rates fixed by the Commission. *See* PURA § 36.057(a) (West 1998); *see generally* Ron Moss, *Ratemaking in the Public Utility Commission of Texas,* 44 Baylor L.Rev. 825, 827–43 (1992).

In a 1982 rate case before the Commission, under the agency's Docket 4400, the Company proposed that it be allowed to recoup its franchise-fee payments directly from its customers on a current basis rather than through rates set from time to time by the Commission. This would be done, according to the Company's proposal, by adding directly to customer bills a pro-rated part of the applicable franchise-fee payments to a city, adjusted periodically as the Company made such payments. The payments would, of course, be then omitted from the Company's "reasonable and necessary operating expenses" in any future calculation of rates fixed by the Commission.

In the course of Docket 4400, numerous cities (including San Juan and Pharr, but not San Benito) agreed to the Company's proposal and entered into a stipulation to the effect indicated. The Commission adopted the stipulation in its final order in Docket 4400, which declared as follows:

[M]unicipal franchise payments shall be recovered by the Company on a current basis by means of a factor to be included in each applicable customer rate schedule. The factor for each rate class will be computed from the cost study finally approved in this docket and shall be

---

1. The Public Utility Regulatory Act is codified as Title 2 of the Texas Utilities Code. *See* Tex. Util.Code Ann. §§ 11.001–63.063 (West 1998 & Supp.2000). For convenience and clarity, we will refer to these sections as "PURA § ___." In referring to other sections of the Code, we will cite to "Tex. Util.Code Ann. § ___."

2. Among the enumerated powers delegated to home-rule cities are the following:

   A home-rule municipality has the following powers: ... To prohibit the use of any street, alley, highway or grounds of the city by any telegraph, telephone, electric light, ... or any other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance and upon paying such compensation as may be prescribed and upon such condition as may be provided by such ordinance. Tex.Rev.Civ. Stat. Ann. art. 1175 (West Supp.2000); *see also* Tex. Loc. Gov't Code Ann. § 282.003 (West 1999); *see generally Entex v. City of Pearland,* 990 S.W.2d 904, 911 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *City of Plano v. Public Util. Comm'n,* 953 S.W.2d 416, 423 (Tex.App.—Austin 1997, no pet.); *Southwestern Pub. Serv. Co. v. Public Util. Comm'n,* 578 S.W.2d 507, 512–13 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.).

expressed as a percentage of the customers' total bill excluding sales tax. The factor will apply to revenues produced by the base rate and fuel charge for each rate class and shall be included within the total dollar amount shown as owing on the customers' bill.

In mid–1996, some fourteen years after the 1982 final order in Docket 4400, the cities of San Juan and Pharr sued the Company in a district court of Hidalgo County; in December 1996, the city of San Benito sued the Company in a district court of Cameron County. The three cities claimed damages based on the Company's alleged underpayment of the franchise fees required by their ordinances and contracts with the Company, alleging causes of action for breach of contract, negligent misrepresentation, fraud, declaratory judgment, an accounting, and the imposition of a constructive trust upon funds held by the Company that were lawfully owned by the named cities. San Benito alleged as well the elements of a class action in behalf of other cities similarly situated. No class action determination has been made insofar as we are informed.

In January 1997, the Company filed in the Commission a "petition for declaratory relief." Therein, the Company alleged the named cities were claiming by their lawsuits additional sums not authorized by the terms of the stipulation in Docket 4400, which the Company alleged was a binding contract and "an essential part of the overall agreement between the parties with regard to franchise fees and, to an even greater degree," the Company's rates fixed by the final order in Docket 4400. It appears the named cities were claiming an amount of franchise fees based on a percentage applied to Company revenues that included franchise-tax and sales-tax collections made by the Company; and, the Company alleged in its petition, the parties in Docket 4400 "never contemplated basing municipal franchise payments on these other revenues."

In its petition to the Commission, the Company requested that the agency issue the following declaratory orders:

1. "[A] declaration from the Commission that it has primary jurisdiction over [the Company's] collection and payment of municipal franchise fees, based upon the agreed mechanism established ... in Docket No. 4400";

2. A declaration that "[a]ny challenge to the procedure established in the Stipulation and Order in Docket 4400 regarding [the Company's] collection and payment of municipal franchise fees must be made at the Commission"; and

3. A declaration that "[t]he ... cities are estopped from challenging the procedure established in the Stipulation and Order in Docket 4400 regarding [the Company's] collection and payment of municipal franchise fees in any forum other than the Commission."

As a legal basis for the requested relief, the Company alleged "that the Commission has continuing jurisdiction over franchise fee issues based on the final Order ... in Docket 4400."

The Commission found there was no necessity for an evidentiary hearing because the "proceeding involves only a legal interpretation of the Commission's authority over disputes relating to the collection and payment of franchise fees to municipalities." In the final order we now review, the Commission denied the Company's request for a declaratory order "that the Commission ... has primary jurisdiction over the payment of municipal franchise fees" and dismissed the Company's petition for want of jurisdiction to issue a declaratory order on the terms requested. In support of its decision, the Commission recited in its order the following conclusions of law:

1. the Commission possesses "authority to issue a declaratory order ... in

accordance with" section 14.051(5) of the Texas Utilities Code;[3]

2. the Commission possesses authority to determine "the proper allocation and collection of franchise fees in utility rates once a home-rule municipality ... has determined the appropriate franchise fee owed by a utility"; but

3. the Commission "does not have authority to determine or modify the franchise fees" charged by a home-rule city under article 1175 of the Texas Revised Civil Statutes, a statute not committed to the Commission's administration.[4]

As we understand the Commission's final order, it affirmed the agency's general power to issue a declaratory order under section 14 .051(5) of the Texas Utilities Code and the agency's jurisdiction to determine the proper allocation and method of collecting franchise fees through customer bills; but the Commission denied having authority or jurisdiction to determine or modify the *amount* of franchise fees fixed by a home-rule city under article 1175 of the Texas Revised Civil Statutes.

The Company sued the Commission in district court for judicial review of the agency's final order. That court affirmed the order and this appeal ensued. The Company brings the assignments of error implicit in its statement of the issues on appeal, as discussed below.

## DISCUSSION AND HOLDINGS

### I.

Does PURA impose a mandatory duty on the Commission to assume jurisdiction over the Company's petition for declaratory relief asking the agency to interpret one of its previous rate orders?

We should say initially that the foregoing issue cannot be answered one way or another in the abstract. The answer depends upon the nature of the previous rate order and the particulars of the petition for declaratory relief. We will therefore confine our discussion to the record in the present case.

As used in PURA, the word "rate" includes "any compensation" or "charge ... that is directly or indirectly demanded, observed, charged, or collected by a public utility for a service, product, or commodity" such as electricity. PURA § 11.03(15)(A) (West 1998). Thus, the word "rate" necessarily includes the franchise fees in question here. PURA imposes upon the Commission a duty to "ensure" that the rates charged by electric utilities are "just and reasonable." PURA § 36.003(a). To accomplish this broad objective, PURA delegates to the agency numerous powers. Among them is a "general power to regulate and supervise the business of" electric utilities within Commission jurisdiction, and a particular power to establish and regulate rates under a complex statutory scheme. PURA § 14.001; *see* PURA §§ 36.001–.353. In addition, the Commission is given exclusive jurisdiction over electric-utility rates in areas outside municipalities and areas within municipalities that have surrendered their jurisdiction to the Commission. *See* PURA § 32.001(a).

Such broadly stated powers cannot, however, be considered in isolation. For example, the "general power to regulate and supervise the business of" electric utilities, delegated to the Commission in PURA section 14.001, if taken literally, gives the agency power to regulate and supervise every business transaction to which a regulated utility is a party, ranging from such things as the payment of a lineman's wages to the construction of a power plant and the payments made for fuel purchases. But these broadly stated powers must find their intended meaning in the context of PURA as a whole, including those provi-

---

**3.** *See* Tex. Util.Code Ann. § 14.051(5) (West 1998).

**4.** *See* Tex.Rev.Civ. Stat. Ann. art. 1175, quoted in material part *supra,* note 2.

sions of PURA containing special provisions dealing with particular matters. And if a conflict appears between a general and a particular provision, effect must be given to both if possible; cases of irreconcilable conflict must be decided in favor of the particular provision absent a manifest legislative intent to the contrary. *See* Tex. Gov't Code Ann. § 311.026(a), (b) (West 1998) (Code Construction Act). One such particular provision is found in PURA section 14.008, pertaining to the franchise fees in dispute in the present case.

■ Concerning the power of home-rule cities to charge franchise fees under article 1175, PURA purports to regulate this sensitive matter by the following provisions:

(a) This title *does not restrict* the rights and powers of a municipality to grant or refuse a franchise to use the streets and alleys in the municipality *or to make a statutory charge* for that use.

(b) A franchise agreement *may not limit or interfere* with a power conferred on the commission by this title.

PURA § 14.008 (emphasis added). Subsection (a) of section 14.008 plainly affirms the broad franchise power possessed by home-rule cities under article 1175, while subsection (b) simultaneously limits that power if it conflicts with statutory powers delegated to the Commission. *See* Dan Pleitz and Robert Randolph Little, *Municipalities and the Public Utility Regulatory Act*, 28 Baylor L.Rev. 977, 989–91 (1976).

■ Upon the foregoing statutory provisions, the Company constructs an argument that the Commission defaulted in a mandatory duty to construe the stipulation in Docket 4400 as not obligating the Company to pay "franchise fees on such items as sales-tax and franchise-tax collections." The Company reasons as follows: (1) the Commission has exclusive jurisdiction to interpret its order in Docket 4400 and the "special expertise" necessary to do so; (2) the cities' lawsuits "directly implicate the Docket 4400 order and require an interpretation of that order"; and (3) the Company has not asked the Commission "to set franchise fees or to adjudicate a contract dispute." [5]

It appears to us that the Commission *did* consider the stipulation and resulting order in Docket 4400 but rejected (1) the Company's proffered interpretation of the stipulation, and (2) the Company's application for the particular declaratory orders described in the Company's "petition for declaratory relief." Moreover, we believe the Commission reasonably harmonized, as it was required to do, the PURA sections giving the agency general powers over regulated utilities and the particular provisions of PURA section 14.008 and article 1175 pertaining to franchise fees. *See Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 273 (1944).

■ The Commission's final order in the present case concludes the Commission *lacks* statutory authority to *fix* or *alter* the franchise fees set by a home-rule city under article 1175 of the Texas Revised Civil Statutes, but affirms the agency's statutory power to determine the proper *allocation* and *collection* of such fees once a home-rule city and a utility have determined what those fees should be. On the

---

**5.** By its assertion that it has not asked the Commission "to set franchise fees or to adjudicate a contract dispute," the Company anticipates its later contention that the Commission possessed primary jurisdiction to decide "franchise fee issues." Specifically, the Company denies here the applicability of the primary-jurisdiction *exception* for cases where the legislature has not given an administrative body, by a valid statute, the power to decide property or contract rights. *See Gregg v. Del-* *hi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 411–16 (1961); *Magnolia Petroleum Co. v. Railroad Comm'n*, 141 Tex. 96, 170 S.W.2d 189, 190–91 (1943); *Biskamp v. General Crude Oil Co.*, 452 S.W.2d 515, 517 (Tex.Civ. App.—San Antonio 1970, writ ref'd). For reasons discussed later in our opinion, we hold the doctrine of primary jurisdiction is not applicable in the present case. Consequently, we need not consider or discuss the exception mentioned.

face of the Commission's order, it has simply made the basic and obvious distinction between the *regulatory* effectiveness of a franchise-fee contract and its effectiveness *outside the sphere* of Commission regulation: the setting of the amount of such fees is a matter of contract between a city and an electric utility and beyond the Commission's regulation, while the proper method of allocating and collecting such expenses is a matter within the Commission's regulatory power under PURA. *See Bolton v. Coats,* 533 S.W.2d 914, 916 (Tex. 1975) (Railroad Commission's order classifying well as "gas" well for regulatory purposes no bar to plaintiff's proof that well was in fact an "oil" well for purposes of common-law action for breach of contract).

The Company does not contend that the Commission's construction of its statutory powers listed above is contrary to the legislature's intent in light of the statutory language involved and the necessity of giving effect to article 1175 as well as both subsections of PURA section 14.008. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981); *Citizens Bank v. First State Bank,* 580 S.W.2d 344, 348 (Tex.1979); *Howell v. Mauzy,* 899 S.W.2d 690, 704 (Tex.App.—Austin 1994, writ denied).

Instead, if we understand correctly the Company's position, it argues that on their face the statutes giving the Commission *general* powers of regulation required the agency to construe the Docket 4400 stipulation as excluding franchise fees and sales taxes, and perhaps other sums, from the revenues by which the amount of the Company's franchise-fee obligation is measured, and then to issue corresponding orders binding on the district courts and the cities of San Juan, Pharr, and San Benito as follows: (1) the Commission has "primary jurisdiction over [the Company's]

collection and payment of" franchise fees; (2) "any challenge to [the Company's] collection and payment of such fees must be made at the Commission" and not in district court; and (3) the "cities are estopped from challenging" in district court "the procedures established in the Stipulation and Order in Docket No. 4400 regarding [the Company's] collection and payment of" the franchise fees. The Company's argument fails for two reasons. First, it does not allow for any effect to be given article 1175 and PURA section 14.008. Second, and more basically, we find in PURA nothing that reasonably implies that the Commission has the power to issue declaratory orders on these unusual terms—a power the Commission has, on reasonable grounds, expressly disclaimed by its final order in the present case.[6] And the Company does not contend that such a power is necessary for the Commission's exercise of its ratemaking or any other function assigned to the agency in clear and express statutory language. *See Sexton v. Mt. Olivet Cemetery Ass'n,* 720 S.W.2d 129, 137 (Tex.App.—Austin 1986, writ ref'd n.r.e.).

For the reasons given, we overrule the Company's contention that the Commission defaulted on a mandatory duty to assume jurisdiction and to order the relief requested in the Company's "petition for declaratory relief."

## II.

If the Commission did not have a mandatory duty to assume jurisdiction over the Company's request for declaratory relief, did the Commission abuse its discretion by declining jurisdiction based on an erroneous legal conclusion?

Under this statement of the issue on appeal, the Company argues that the Commission "abused its discretion in declining jurisdiction because it based its decision on

---

6. Were the legislature to delegate such powers to an administrative agency, the delegation would, of course, raise serious separation-of-powers issues because it would purport to authorize an administrative agency's exercise of control over the district courts.

an erroneous legal conclusion" that the agency "lacked all jurisdiction." We disagree.

The Commission's final order in the present case declares that "this docket is dismissed [because] the Commission lacks jurisdiction over [the Company's] *payment* of municipal franchise fees," citing a Commission rule that includes "lack of jurisdiction" as a basis for dismissing a proceeding without an evidentiary hearing. P.U.C. Proc. Rule § 22.181(a)(1)(A). (Emphasis added).

The Company argues that the Commission has express statutory jurisdiction to interpret its own orders, which is obvious. *See* Tex. Util.Code Ann. § 14.051(5) (West 1998). The Commission's order in its entirety reflects that the Commission affirmed *that* statutory power or jurisdiction but disclaimed a statutory power *to grant the relief requested,* which was a modification of the amount of the franchise fees fixed by the parties' contracts and the issuance of declaratory orders of an equitable nature. Accordingly, we overrule the Company's contention for the reasons stated in our discussion of the Company's first issue on appeal.

### III.

■ Did the doctrine of primary jurisdiction require the Commission to assume jurisdiction over the Company's request for declaratory relief?

■ The Company misconceives the doctrine of primary jurisdiction in its argument under this statement of the issue on appeal. The doctrine of primary jurisdiction is a judicial doctrine having no application in the present case. The doctrine assumes that a case has first been brought *in a court;* that the doctrine has been raised as a reason for the court's not proceeding to judgment; and, where the doctrine requires, the court *defers* exercising its own jurisdiction until the agency decides some material issue confided to the agency's jurisdiction by statute. The doc-

trine thus assures that the agency is not by-passed on a matter or matters within its jurisdiction while the court in which the case is brought initially retains its power to decide ultimately any remaining issues and the decision proper on the whole case. *See Amarillo Oil Co. v. Energy–Agri Prods., Inc.,* 794 S.W.2d 20, 25 (Tex.1990); *Texas Liquor Control Bd. v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 896 (Tex. 1970); *Gregg v. Delhi–Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411, 413–16 (1961); *Kavanaugh v. Underwriters Life Ins. Co.,* 231 S.W.2d 753, 755–56 (Tex.Civ.App.— Waco 1950, writ ref'd); Bernard Schwartz, *Administrative Law* § 8.23, 485–86 (2d ed.1984); Morris L. Jaffe, *Judicial Control of Administrative Action* 121 (1965). The Company's theory would stand the doctrine on its head.

Here, the Company has filed an original proceeding not in a court but *in the Commission,* asking the agency itself to declare that it possesses primary jurisdiction to decide without court interference the matters referred to above, and to issue declaratory orders accordingly. The doctrine of primary jurisdiction has no such application. If the Company wishes to interpose the doctrine as a defensive plea in the litigation now pending in the district courts of Hidalgo and Cameron counties, then those courts would have to determine the application of the doctrine in that litigation and defer, if need be, to the Commission's prior decision on some issue those courts deem material.

We overrule the Company's contention that the Commission was required by the doctrine of primary jurisdiction to assume jurisdiction over the Company's request for declaratory relief in the proceeding we now review.

### IV.

Is the Commission's failure to assert jurisdiction inconsistent with its own findings?

The Company argues that the Commission's conclusion that it had jurisdiction to

interpret and enforce its orders is inconsistent with the agency's dismissing, for want of jurisdiction, the Company's "petition for declaratory relief" wherein the Company requested an interpretation of the Commission's final order in Docket 4400.

We find no merit in the argument. It fails to distinguish between the Commission's jurisdiction to interpret its order in Docket 4400 and the agency's want of jurisdiction, under article 1175 and PURA section 14.008, to adopt the particular interpretation for which the Company contends. We hold accordingly.

## V.

Did the Commission err because its own general counsel agreed that the Commission should exercise jurisdiction?

■ The Commission's general counsel advised the Commission that he believed the agency possessed jurisdiction to adopt the Company's interpretation of the agency's order and stipulation in Docket 4400. The Company contends, apparently, that the Commission erred in not following the advice of its general counsel. We reject the argument. We find in the relevant statutes nothing to suggest that the Commission is bound to follow the advice of its general counsel. Rather, the Commission itself "exercises the jurisdiction and powers conferred" upon the agency. Tex. Util.Code Ann. § 12.001 (West 1998).

For the reasons given, we affirm the district-court judgment.