TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00204-CV







Central Power and Light Company, Appellant



v.



Public Utility Commission of Texas; and Cities of San Juan,


Pharr, and San Benito, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 97-07100, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING








 Central Power and Light Company (the "Company"), a regulated public utility,
appeals from a district-court judgment affirming the final order of the Public Utility Commission
(the "Commission") in a suit brought by the Company for judicial review of that order, as
authorized by section 1.301 of the Public Utility Regulatory Act ("PURA"). See Tex. Util. Code
Ann. § 1.301 (West 1998). (1) The municipalities of San Juan, Pharr, and San Benito intervened
in the suit in defense of the Commission's final order and have filed on appeal a joint brief. We
will affirm the district-court judgment.


THE CONTROVERSY


 The Company furnishes electric power to customers in a number of Texas
municipalities and has entered into contracts with numerous home-rule cities. (2) By such contracts,
the Company has obtained the use of city streets, alleys, highways, and public grounds for
Company facilities. In compensation, the contracts require the Company to pay "franchise fees"
to the cities in amounts fixed by the contracts or by city ordinances.

 For a number of years, the Company paid the franchise fees in accordance with the
contracts and ordinances. The Company, in turn, recouped the expense indirectly from its
customers as one of the "reasonable and necessary operating expenses" that the Company is
entitled to recover by and through its electric-service rates fixed by the Commission. See PURA
§ 36.057(a) (West 1998); see generally Ron Moss, Ratemaking in the Public Utility Commission
of Texas, 44 Baylor L. Rev. 825, 827-43 (1992).

 In a 1982 rate case before the Commission, under the agency's Docket 4400, the
Company proposed that it be allowed to recoup its franchise-fee payments directly from its
customers on a current basis rather than through rates set from time to time by the Commission. 
This would be done, according to the Company's proposal, by adding directly to customer bills
a pro-rated part of the applicable franchise-fee payments to a city, adjusted periodically as the
Company made such payments. The payments would, of course, be then omitted from the
Company's "reasonable and necessary operating expenses" in any future calculation of rates fixed
by the Commission.

 In the course of Docket 4400, numerous cities (including San Juan and Pharr, but
not San Benito) agreed to the Company's proposal and entered into a stipulation to the effect
indicated. The Commission adopted the stipulation in its final order in Docket 4400, which
declared as follows:


[M]unicipal franchise payments shall be recovered by the Company on a current
basis by means of a factor to be included in each applicable customer rate schedule. 
The factor for each rate class will be computed from the cost study finally
approved in this docket and shall be expressed as a percentage of the customers'
total bill excluding sales tax. The factor will apply to revenues produced by the
base rate and fuel charge for each rate class and shall be included within the total
dollar amount shown as owing on the customers' bill.



 In mid-1996, some fourteen years after the 1982 final order in Docket 4400, the
cities of San Juan and Pharr sued the Company in a district court of Hidalgo County; in December
1996, the city of San Benito sued the Company in a district court of Cameron County. The three
cities claimed damages based on the Company's alleged underpayment of the franchise fees
required by their ordinances and contracts with the Company, alleging causes of action for breach
of contract, negligent misrepresentation, fraud, declaratory judgment, an accounting, and the
imposition of a constructive trust upon funds held by the Company that were lawfully owned by
the named cities. San Benito alleged as well the elements of a class action in behalf of other cities
similarly situated. No class action determination has been made insofar as we are informed.

 In January 1997, the Company filed in the Commission a "petition for declaratory 
relief." Therein, the Company alleged the named cities were claiming by their lawsuits additional
sums not authorized by the terms of the stipulation in Docket 4400, which the Company alleged
was a binding contract and "an essential part of the overall agreement between the parties with
regard to franchise fees and, to an even greater degree," the Company's rates fixed by the final
order in Docket 4400. It appears the named cities were claiming an amount of franchise fees
based on a percentage applied to Company revenues that included franchise-tax and sales-tax
collections made by the Company; and, the Company alleged in its petition, the parties in Docket
4400 "never contemplated basing municipal franchise payments on these other revenues."

 In its petition to the Commission, the Company requested that the agency issue the
following declaratory orders:


1. "[A] declaration from the Commission that it has primary jurisdiction over
[the Company's] collection and payment of municipal franchise fees, based
upon the agreed mechanism established . . . in Docket No. 4400";


2. A declaration that "[a]ny challenge to the procedure established in the
Stipulation and Order in Docket 4400 regarding [the Company's] collection
and payment of municipal franchise fees must be made at the Commission";
and


3. A declaration that "[t]he . . . cities are estopped from challenging the
procedure established in the Stipulation and Order in Docket 4400 regarding
[the Company's] collection and payment of municipal franchise fees in any
forum other than the Commission."



 As a legal basis for the requested relief, the Company alleged "that the Commission
has continuing jurisdiction over franchise fee issues based on the final Order . . . in Docket
4400."

 The Commission found there was no necessity for an evidentiary hearing because
the "proceeding involves only a legal interpretation of the Commission's authority over disputes
relating to the collection and payment of franchise fees to municipalities." In the final order we
now review, the Commission denied the Company's request for a declaratory order "that the
Commission . . . has primary jurisdiction over the payment of municipal franchise fees" and
dismissed the Company's petition for want of jurisdiction to issue a declaratory order on the terms
requested. In support of its decision, the Commission recited in its order the following
conclusions of law:


1. the Commission possesses "authority to issue a declaratory order . . . in
accordance with" section 14.051(5) of the Texas Utilities Code; (3)


2. the Commission possesses authority to determine "the proper allocation and
collection of franchise fees in utility rates once a home-rule municipality . . .
has determined the appropriate franchise fee owed by a utility"; but


3. the Commission "does not have authority to determine or modify the franchise
fees" charged by a home-rule city under article 1175 of the Texas Revised
Civil Statutes, a statute not committed to the Commission's administration. (4)


 As we understand the Commission's final order, it affirmed the agency's general
power to issue a declaratory order under section 14.051(5) of the Texas Utilities Code and the
agency's jurisdiction to determine the proper allocation and method of collecting franchise fees
through customer bills; but the Commission denied having authority or jurisdiction to determine
or modify the amount of franchise fees fixed by a home-rule city under article 1175 of the Texas
Revised Civil Statutes.

 The Company sued the Commission in district court for judicial review of the
agency's final order. That court affirmed the order and this appeal ensued. The Company brings
the assignments of error implicit in its statement of the issues on appeal, as discussed below.


DISCUSSION AND HOLDINGS


I.


 Does PURA impose a mandatory duty on the Commission to assume jurisdiction
over the Company's petition for declaratory relief asking the agency to interpret one of its
previous rate orders?

 We should say initially that the foregoing issue cannot be answered one way or
another in the abstract. The answer depends upon the nature of the previous rate order and the
particulars of the petition for declaratory relief. We will therefore confine our discussion to the
record in the present case.

 As used in PURA, the word "rate" includes "any compensation" or "charge . . .
that is directly or indirectly demanded, observed, charged, or collected by a public utility for a
service, product, or commodity" such as electricity. PURA § 11.03(15)(A) (West 1998). Thus,
the word "rate" necessarily includes the franchise fees in question here. PURA imposes upon the
Commission a duty to "ensure" that the rates charged by electric utilities are "just and
reasonable." PURA § 36.003(a). To accomplish this broad objective, PURA delegates to the
agency numerous powers. Among them is a "general power to regulate and supervise the
business of" electric utilities within Commission jurisdiction, and a particular power to establish
and regulate rates under a complex statutory scheme. PURA § 14.001; see PURA §§ 36.001-.353. In addition, the Commission is given exclusive jurisdiction over electric-utility rates in
areas outside municipalities and areas within municipalities that have surrendered their jurisdiction
to the Commission. See PURA § 32.001(a). 

 Such broadly stated powers cannot, however, be considered in isolation. For
example, the "general power to regulate and supervise the business of" electric utilities, delegated
to the Commission in PURA section 14.001, if taken literally, gives the agency power to regulate
and supervise every business transaction to which a regulated utility is a party, ranging from such
things as the payment of a lineman's wages to the construction of a power plant and the payments
made for fuel purchases. But these broadly stated powers must find their intended meaning in the
context of PURA as a whole, including those provisions of PURA containing special provisions
dealing with particular matters. And if a conflict appears between a general and a particular
provision, effect must be given to both if possible; cases of irreconcilable conflict must be decided
in favor of the particular provision absent a manifest legislative intent to the contrary. See Tex.
Gov't Code Ann. § 311.026(a), (b) (West 1998) (Code Construction Act). One such particular
provision is found in PURA section 14.008, pertaining to the franchise fees in dispute in the
present case.

 Concerning the power of home-rule cities to charge franchise fees under article
1175, PURA purports to regulate this sensitive matter by the following provisions:


(a) This title does not restrict the rights and powers of a municipality to grant or
refuse a franchise to use the streets and alleys in the municipality or to make
a statutory charge for that use.


(b) A franchise agreement may not limit or interfere with a power conferred on
the commission by this title.



PURA § 14.008 (emphasis added). Subsection (a) of section 14.008 plainly affirms the broad
franchise power possessed by home-rule cities under article 1175, while subsection (b)
simultaneously limits that power if it conflicts with statutory powers delegated to the Commission. 
See Dan Pleitz and Robert Randolph Little, Municipalities and the Public Utility Regulatory Act,
28 Baylor L. Rev. 977, 989-91 (1976).

 Upon the foregoing statutory provisions, the Company constructs an argument that
the Commission defaulted in a mandatory duty to construe the stipulation in Docket 4400 as not
obligating the Company to pay "franchise fees on such items as sales-tax and franchise-tax
collections." The Company reasons as follows: (1) the Commission has exclusive jurisdiction
to interpret its order in Docket 4400 and the "special expertise" necessary to do so; (2) the cities'
lawsuits "directly implicate the Docket 4400 order and require an interpretation of that order";
and (3) the Company has not asked the Commission "to set franchise fees or to adjudicate a
contract dispute." (5)

 It appears to us that the Commission did consider the stipulation and resulting order
in Docket 4400 but rejected (1) the Company's proffered interpretation of the stipulation, and (2)
the Company's application for the particular declaratory orders described in the Company's
"petition for declaratory relief." Moreover, we believe the Commission reasonably harmonized,
as it was required to do, the PURA sections giving the agency general powers over regulated
utilities and the particular provisions of PURA section 14.008 and article 1175 pertaining to
franchise fees. See Stanford v. Butler, 181 S.W.2d 269, 273 (Tex. 1944).

 The Commission's final order in the present case concludes the Commission lacks
statutory authority to fix or alter the franchise fees set by a home-rule city under article 1175 of
the Texas Revised Civil Statutes, but affirms the agency's statutory power to determine the proper
allocation and collection of such fees once a home-rule city and a utility have determined what
those fees should be. On the face of the Commission's order, it has simply made the basic and
obvious distinction between the regulatory effectiveness of a franchise-fee contract and its
effectiveness outside the sphere of Commission regulation: the setting of the amount of such fees
is a matter of contract between a city and an electric utility and beyond the Commission's
regulation, while the proper method of allocating and collecting such expenses is a matter within
the Commission's regulatory power under PURA. See Bolton v. Coats, 533 S.W.2d 914, 916
(Tex. 1975) (Railroad Commission's order classifying well as "gas" well for regulatory purposes
no bar to plaintiff's proof that well was in fact an "oil" well for purposes of common-law action
for breach of contract).

 The Company does not contend that the Commission's construction of its statutory
powers listed above is contrary to the legislature's intent in light of the statutory language
involved and the necessity of giving effect to article 1175 as well as both subsections of PURA
section 14.008. See Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981);
Citizens Bank v. First State Bank, 580 S.W.2d 344, 348 (Tex. 1979); Howell v. Mauzy, 899
S.W.2d 390, 704 (Tex. App.--Austin 1994, writ denied).

 Instead, if we understand correctly the Company's position, it argues that on their
face the statutes giving the Commission general powers of regulation required the agency to
construe the Docket 4400 stipulation as excluding franchise fees and sales taxes, and perhaps other
sums, from the revenues by which the amount of the Company's franchise-fee obligation is
measured, and then to issue corresponding orders binding on the district courts and the cities of
San Juan, Pharr, and San Benito as follows: (1) the Commission has "primary jurisdiction over
[the Company's] collection and payment of" franchise fees; (2) "any challenge to [the Company's]
collection and payment of such fees must be made at the Commission" and not in district court;
and (3) the "cities are estopped from challenging" in district court "the procedures established in
the Stipulation and Order in Docket No. 4400 regarding [the Company's] collection and payment
of" the franchise fees. The Company's argument fails for two reasons. First, it does not allow
for any effect to be given article 1175 and PURA section 14.008. Second, and more basically,
we find in PURA nothing that reasonably implies that the Commission has the power to issue
declaratory orders on these unusual terms--a power the Commission has, on reasonable grounds, 
expressly disclaimed by its final order in the present case. (6) And the Company does not contend
that such a power is necessary for the Commission's exercise of its ratemaking or any other
function assigned to the agency in clear and express statutory language. See Sexton v. Mt. Olivet
Cemetery Ass'n, 720 S.W.2d 129, 137 (Tex. App.--Austin 1986, writ ref'd n.r.e.).

 For the reasons given, we overrule the Company's contention that the Commission
defaulted on a mandatory duty to assume jurisdiction and to order the relief requested in the
Company's "petition for declaratory relief."


II.


 If the Commission did not have a mandatory duty to assume jurisdiction over the
Company's request for declaratory relief, did the Commission abuse its discretion by declining
jurisdiction based on an erroneous legal conclusion?

 Under this statement of the issue on appeal, the Company argues that the
Commission "abused its discretion in declining jurisdiction because it based its decision on an
erroneous legal conclusion" that the agency "lacked all jurisdiction." We disagree.

 The Commission's final order in the present case declares that "this docket is
dismissed [because] the Commission lacks jurisdiction over [the Company's] payment of municipal
franchise fees," citing a Commission rule that includes "lack of jurisdiction" as a basis for
dismissing a proceeding without an evidentiary hearing. P.U.C. Proc. Rule § 22.181(a)(1)(A). 
(Emphasis added).

 The Company argues that the Commission has express statutory jurisdiction to
interpret its own orders, which is obvious. See Tex. Util. Code Ann. § 14.051(5) (West 1998). 
The Commission's order in its entirety reflects that the Commission affirmed that statutory power
or jurisdiction but disclaimed a statutory power to grant the relief requested, which was a
modification of the amount of the franchise fees fixed by the parties' contracts and the issuance
of declaratory orders of an equitable nature. Accordingly, we overrule the Company's contention
for the reasons stated in our discussion of the Company's first issue on appeal.


III.


 Did the doctrine of primary jurisdiction require the Commission to assume
jurisdiction over the Company's request for declaratory relief?

 The Company misconceives the doctrine of primary jurisdiction in its argument
under this statement of the issue on appeal. The doctrine of primary jurisdiction is a judicial
doctrine having no application in the present case. The doctrine assumes that a case has first been
brought in a court; that the doctrine has been raised as a reason for the court's not proceeding to
judgment; and, where the doctrine requires, the court defers exercising its own jurisdiction until
the agency decides some material issue confided to the agency's jurisdiction by statute. The
doctrine thus assures that the agency is not by-passed on a matter or matters within its jurisdiction
while the court in which the case is brought initially retains its power to decide ultimately any
remaining issues and the decision proper on the whole case. See Amarillo Oil Co. v. Energy-Agri
Prods., Inc., 794 S.W.2d 20, 25 (Tex. 1990); Texas Liquor Control Bd. v. Canyon Creek Land
Corp., 456 S.W.2d 891, 896 (Tex. 1970); Gregg v. Delhi-Taylor Oil Corp., 344 S.W.2d 411,
413-16 (Tex. 1961); Kavanaugh v. Underwriters Life Ins. Co., 231 S.W.2d 753, 755-56 (Tex.
Civ. App.--Waco 1950, writ ref'd ); Bernard Schwartz, Administrative Law § 8.23, 485-86 (2d
ed. 1984); Morris L. Jaffe, Judicial Control of Administrative Action 121 (1965). The Company's
theory would stand the doctrine on its head.

 Here, the Company has filed an original proceeding not in a court but in the
Commission, asking the agency itself to declare that it possesses primary jurisdiction to decide
without court interference the matters referred to above, and to issue declaratory orders
accordingly. The doctrine of primary jurisdiction has no such application. If the Company
wishes to interpose the doctrine as a defensive plea in the litigation now pending in the district
courts of Hidalgo and Cameron counties, then those courts would have to determine the
application of the doctrine in that litigation and defer, if need be, to the Commission's prior
decision on some issue those courts deem material.

 We overrule the Company's contention that the Commission was required by the
doctrine of primary jurisdiction to assume jurisdiction over the Company's request for declaratory
relief in the proceeding we now review.


IV.


 Is the Commission's failure to assert jurisdiction inconsistent with its own findings?

 The Company argues that the Commission's conclusion that it had jurisdiction to
interpret and enforce its orders is inconsistent with the agency's dismissing, for want of
jurisdiction, the Company's "petition for declaratory relief" wherein the Company requested an
interpretation of the Commission's final order in Docket 4400.

 We find no merit in the argument. It fails to distinguish between the Commission's 
jurisdiction to interpret its order in Docket 4400 and the agency's want of jurisdiction, under
article 1175 and PURA section 14.008, to adopt the particular interpretation for which the
Company contends. We hold accordingly.


V.


 Did the Commission err because its own general counsel agreed that the
Commission should exercise jurisdiction?

 The Commission's general counsel advised the Commission that he believed the
agency possessed jurisdiction to adopt the Company's interpretation of the agency's order and
stipulation in Docket 4400. The Company contends, apparently, that the Commission erred in
not following the advice of its general counsel. We reject the argument. We find in the relevant
statutes nothing to suggest that the Commission is bound to follow the advice of its general
counsel. Rather, the Commission itself "exercises the jurisdiction and powers conferred" upon
the agency. Tex. Util. Code Ann. § 12.001 (West 1998).

 For the reasons given, we affirm the district-court judgment.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices Jones and Powers*

Affirmed

Filed: May 4, 2000

Publish
















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The Public Utility Regulatory Act is codified as Title 2 of the Texas Utilities Code. See
Tex. Util. Code Ann. §§ 11.001-63.063 (West 1998 & Supp. 2000). For convenience and clarity,
we will refer to these sections as "PURA § ." In referring to other sections of the Code, we
will cite to "Tex. Util. Code Ann. § ."
2. Among the enumerated powers delegated to home-rule cities are the following:


A home-rule municipality has the following powers: . . . To prohibit the use
of any street, alley, highway or grounds of the city by any telegraph,
telephone, electric light, . . . or any other character of public utility without
first obtaining the consent of the governing authorities expressed by ordinance
and upon paying such compensation as may be prescribed and upon such
condition as may be provided by such ordinance.


Tex. Rev. Civ. Stat. Ann. art. 1175 (West Supp. 2000); see also Tex. Loc. Gov't Code Ann.
§ 282.003 (West 1999); see generally Entex v. City of Pearland, 990 S.W.2d 904, 911 (Tex.
App.--Houston [14th Dist.] 1999, no pet.); City of Plano v. Public Util. Comm'n, 953 S.W.2d
416, 423 (Tex. App.--Austin 1997, no pet.); Southwestern Pub. Serv. Co. v. Public Util. Comm'n,
578 S.W.2d 507, 512-13 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.).
3. See Tex. Util. Code Ann. § 14.051(5) (West 1998).
4. See Tex. Rev. Civ. Stat. Ann. art. 1175, quoted in material part supra, note 2.
5. By its assertion that it has not asked the Commission "to set franchise fees or to
adjudicate a contract dispute," the Company anticipates its later contention that the Commission
possessed primary jurisdiction to decide "franchise fee issues." Specifically, the Company denies
here the applicability of the primary-jurisdiction exception for cases where the legislature has not
given an administrative body, by a valid statute, the power to decide property or contract rights. 
See Gregg v. Delhi-Taylor Oil Corp., 344 S.W.2d 411, 411-16 (Tex. 1961); Magnolia Petroleum
Co. v. Railroad Comm'n, 170 S.W.2d 189, 190-91 (Tex. 1943); Biskamp v. General Crude Oil
Co., 452 S.W.2d 515, 517 (Tex. Civ. App.--San Antonio 1970, writ ref'd). For reasons discussed
later in our opinion, we hold the doctrine of primary jurisdiction is not applicable in the present
case. Consequently, we need not consider or discuss the exception mentioned.
6. Were the legislature to delegate such powers to an administrative agency, the delegation
would, of course, raise serious separation-of-powers issues because it would purport to authorize
an administrative agency's exercise of control over the district courts.



e relevant
statutes nothing to suggest that the Commission is bound to follow the advice of its general
counsel. Rather, the Commission itself "exercises the jurisdiction and powers conferred" upon
the agency. Tex. Util. Code Ann. § 12.001 (West 1998).

 For the reasons given, we affirm the district-court judgment.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices Jones and Powers*

Affirmed

Filed: May 4, 2000

Publish
















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The Public Utility Regulatory Act is codified as Title 2 of the Texas Utilities Code. See
Tex. Util. Code Ann. §§ 11.001-63.063 (West 1998 & Supp. 2000). For convenience and clarity,
we will refer to these sections as "PURA § ." In referring to other sections of the Code, we
will cite to "Tex. Util. Code Ann. § ."
2. Among the enumerated powers delegated to home-rule cities are the following: