TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00469-CV







Steering Committees for the Cities Served by TXU Electric and Central Power


and Light Company, Appellants



v.



Public Utility Commission and TXU Energy Services Company, Appellees








FROM THE PUBLIC UTILITY COMMISSION OF TEXAS








 In this declaratory judgment action, Steering Committees of Cities Served by TXU
Electric and Central Power and Light Company (the Cities) challenge the Public Utility
Commission's implementation of the electric utilities deregulation statutes governing who may
purchase electricity for resale in Rule 25.111. (1) See 16 Tex. Admin. Code § 25.111 (2001). The
Cities complain that the Commission misinterpreted the statutes and as a result, unconstitutionally
limited the powers of home-rule municipalities by prohibiting them from purchasing electricity
for resale to their citizens. TXU Energy Services Company (TXU) intervened in support of the
Commission's rule. We hold that the Commission reasonably interpreted the deregulation statutes
in promulgating Rule 25.111 and we affirm the Commission's order.


FACTUAL AND PROCEDURAL BACKGROUND

 In 1999, the legislature deregulated the electric utility industry by enacting
legislation to allow competitive generation of power and retail sale of electricity. Act of May 27,
1999, 76th Leg., R.S., ch. 405, §§ 1-67, 1999 Tex. Gen. Laws 2543. By January 1, 2002, each
electric utility must separate its energy services business activities into the following units: a
power generation company, a retail electric provider, and a transmission and distribution utility. (2) 
See Public Utility Regulatory Act (PURA), Tex. Util. Code Ann. § 39.051(b) (West Supp. 2001). 
Participation in the retail sales market is not limited to former electric power providers and will
be determined by "the normal forces of competition." Id. § 39.001(a).

 The legislature developed certain prerequisites for participating in deregulated retail
sale of electricity. Retail electric providers may sell electricity to customers only after they are
certified by the Commission. Id. § 39.352(a). To be certified, retail electric providers must
demonstrate: (1) financial and technical resources sufficient to provide continuous and reliable
service, (2) managerial and technical ability to supply electricity according to customers'
contracts, (3) resources that meet certain customer protection requirements, and (4) ownership or
lease of an office in Texas for the purpose of providing customer service. Id. § 39.352(b). The
Commission set out these requirements for certification in Rule 25.107. 16 Tex. Admin. Code
§ 25.107 (2001).

 The statutory scheme distinguishes retail electric providers from aggregators, those
who join electricity customers together to negotiate the purchase of electricity. (3) Tex. Util. Code
Ann. § 39.353(b) (West Supp. 2001) ("Retail electric providers are not aggregators."). 
Generally, aggregators may not purchase electricity for resale. Id. Aggregators need only
register with the Commission to provide aggregation services. (4) Id. § 39.353(a). The Commission
adopted Rule 25.111 to establish requirements and procedures for registering aggregators. 16
Tex. Admin. Code § 25.111. The rule imparts that municipalities may not purchase electricity
for resale to their citizens. See id. § 25.111(d)(4)(C); see also 25 Tex. Reg. 6103, 6110 cmt.
(2000) ("Under the statutory scheme, municipalities and political subdivisions may act as
aggregators, not resellers, of electric power to private citizens.").

 The Cities challenge this prohibition on their ability to resell electricity to their
citizens. They bring a declaratory judgment action asking this Court to declare Rule 25.111
invalid on the basis that the Commission misinterpreted chapter 303 of the Local Government
Code when it promulgated the rule. See Tex. Loc. Gov't Code Ann. §§ 303.001-.002 (West
Supp. 2001). The Cities contend that the deregulation statutes permit home-rule municipalities
to take title to electricity when acting as aggregators for their citizens. As further support for
their challenge to the Commission's interpretation of the statutes, the Cities claim that Rule 25.111
unreasonably undermines the constitutional authority of home-rule cities without a clear legislative
directive to do so. The Cities also argue that prohibiting municipalities from reselling electricity
to their citizens frustrates legislative intent by constraining the development of a competitive
electric power industry. The Cities appeal directly to this Court. See Tex. Util. Code Ann.
§ 39.001(e) (West Supp. 2001).


DISCUSSIONI.  Statutory Construction

 Rule 25.111 sets out the types of aggregators who must register, restrictions on
registered aggregators, and procedures for registration. 16 Tex. Admin. Code § 25.111. The
Commission designates a municipality as a Class II aggregator, id. § 25.111(c)(2)(B), which may
not take title to electricity for the purpose of retail sales. (5) Id. § 25.111(d)(4).

 The Cities first contend that in promulgating Rule 25.111 the Commission
unreasonably construed Utility Code sections 39.353, 39.354, and 39.3545 and Local Government
Code section 303.002. Construction of a statute by the administrative agency charged with its
enforcement is entitled to serious consideration, as long as the construction is reasonable and does
not contradict the plain language of the statute. Gene Hamon Ford, Inc. v. David McDavid
Nissan, Inc., 997 S.W.2d 298, 305 (Tex. App.--Austin 1999, pet. denied) (citing Tarrant
Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993)). This is particularly true when the
statute involves complex subject matter. Cf. City of Plano v. Pub. Util. Comm'n, 953 S.W.2d
416, 421 (Tex. App.--Austin 1997, no pet.). As long as the agency's ruling is a reasonable
reading of the statute, this Court will affirm if that reading is in harmony with the rest of the
statute, even if other reasonable interpretations exist. See Gene Hamon Ford, 997 S.W.2d at 305
(citing City of Plano, 953 S.W.2d at 421). We do not look at individual provisions of the statute
in isolation; rather, we construe the statute as a whole. See Cent. Power & Light Co. v. Pub.
Util. Comm'n, 17 S.W.3d 780, 784-85 (Tex. App.--Austin 2000, pet. denied). In construing a
statute, our objective is to determine and give effect to the legislature's intent. Nat'l Liab. & Fire
Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000).

 The Cities assert that the Commission improperly construed Utility Code sections
39.353, 39.354, and 39.3545 by failing to recognize the legislative intent to allow public
aggregators, which includes the Cities, to purchase and resell electricity, while precluding private
aggregators from doing so. The Cities urge that only private aggregators are denied the right to
purchase electricity under Utility Code section 39.353, while municipal and political subdivision
aggregators are not similarly restricted under sections 39.354 and 39.3545. (6) These sections
provide as follows:


§ 39.353. Registration of Aggregators


(a) A person may not provide aggregation services in the state unless the person
is registered with the commission as an aggregator.


(b) In this subchapter, "aggregator" means a person joining two or more
customers, other than municipalities and political subdivision corporations,
into a single purchasing unit to negotiate the purchase of electricity from retail
electric providers. Aggregators may not sell or take title to electricity. Retail
electric providers are not aggregators.


 . . . .


§ 39.354. Registration of Municipal Aggregators


(a) A municipal aggregator may not provide aggregation services in the state
unless the municipal aggregator registers with the commission.


(b) In this section, "municipal aggregator" means a person authorized by two or
more municipal governing bodies to join the bodies into a single purchasing
unit to negotiate the purchase of electricity from retail electric providers or
aggregation by a municipality under Chapter 303, Local Government Code.


 . . . .


§ 39.3545. Registration of Political Subdivision Aggregators


(a) A political subdivision aggregator may not provide aggregation services in the
state unless the political subdivision aggregator registers with the commission.


(b) In this section, "political subdivision aggregator" means a person or political
subdivision corporation authorized by two or more political subdivision
governing bodies to join the bodies into a single purchasing unit or multiple
purchasing units to negotiate the purchase of electricity from retail electric
providers for the facilities of the aggregated political subdivisions or
aggregation by a person or political subdivision under Chapter 303, Local
Government Code.


 . . . . 



Tex. Util. Code Ann. §§ 39.353, .354, .3545 (West Supp. 2001) (emphasis added). The Cities
maintain that these sections permit public aggregators to take title to electricity.

 Further, the Cities assert that Local Government Code section 303.002 allows
political subdivisions to purchase electricity because that section does not expressly prohibit them
from doing so. See Tex. Loc. Gov't Code Ann. § 303.002. That section, entitled Aggregation
by Political Subdivisions for Citizens, states in relevant part:


(a) A political subdivision aggregator may negotiate for the purchase of electricity
and energy services on behalf of the citizens of the political subdivision. . .
.


(b) A political subdivision may contract with a third party or another aggregator
to administer the aggregation of electricity and energy services purchased
under Subsection (a).



Id. § 303.002(a), (b). The Cities conclude that because this section does not forbid the purchase
of electricity by municipalities, the legislature did not preempt the power of a municipality to
purchase electricity when aggregating for its citizens.

 The Commission counters that the legislature clearly indicated its intent to prohibit
municipalities, as aggregators, from purchasing electricity for resale to their citizens in Local
Government Code chapter 303. According to the Commission, Local Government Code sections
303.001 and 303.002 add to the Utility Code's distinction between public and private aggregators
by distinguishing between the purchase of electricity for use in public facilities versus use by
private citizens. Section 303.001 provides:


§ 303.001. Aggregation by Political Subdivisions


(a) In this chapter, "political subdivision means a . . . municipality, . . . .


(b) A political subdivision may join with another political subdivision or
subdivisions to form a political subdivision corporation or corporations to act
as an agent to negotiate the purchase of electricity, or to likewise aid or act on
behalf of the political subdivisions for which the corporation is created, with
respect to their own electricity use for their respective public facilities.


 . . . .


(d) A political subdivision corporation may negotiate on behalf of its
incorporating political subdivisions for the purchase of electricity, make
contracts for the purchase of electricity, purchase electricity, and take any
other action necessary to purchase electricity for use in the public facilities of
the political subdivision . . . represented by the political subdivision
corporation. . . . .



Id. § 303.001 (emphasis added). Unlike section 303.002, which involves public subdivisions
aggregating for their citizens, section 303.001 expressly permits a political subdivision corporation
to purchase electricity for use in public facilities. (7) The Commission contends that this second
distinction demonstrates the legislative intent to allow a municipality to purchase electricity only
for use in public facilities, but not for resale to its citizens.

 Despite the Cities' contention that municipalities may purchase electricity because
section 303.002 does not expressly prohibit them from doing so, we presume that the purposeful
inclusion of certain terms in a statute implies the purposeful exclusion of terms that are absent
under the principle of statutory interpretation inclusio unius est exclusio alterius. See Laidlaw
Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 659 (Tex. 1995); Cameron v.
Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981). The express power to purchase
electricity for use in public facilities under section 303.001, therefore, cannot be read into section
303.002 governing the aggregation but not the purchase of electricity for the benefit of citizens.

 The Commission reads section 303.001 as a narrow exception to the general rule
that aggregators may not purchase electricity, (8) and we conclude this is a reasonable reading of the
deregulation statutes as a whole. This position is bolstered by Utility Code section 39.353, which
states that "[a]ggregators may not sell or take title to electricity. Retail electric providers are not
aggregators." (9) Tex. Util. Code Ann. § 39.353(b). We hold that the Commission's interpretation
of the electricity deregulation statutes reflected in Rule 25.111 is reasonable.

 The Cities also argue that if a municipality cannot purchase and resell electricity
to its citizens, Local Government Code section 303.002(b) is rendered meaningless. See Tex.
Loc. Gov't Code Ann. § 303.002(b). That section allows a political subdivision to contract with
a third party or another aggregator to administer aggregation on its behalf. Id. The Commission
and TXU both refer to a number of administrative matters that arise when an entity aggregates
electricity, including compiling and updating lists of the citizens represented by the municipality. 
We hold that section 303.002(b) is not rendered meaningless by Rule 25.111. We overrule the
Cities' first point of error.


II. Home-Rule Municipalities

 A. Preservation of Error

 The Cities next assert that the Commission does not have the authority to
promulgate a rule that unconstitutionally prohibits a home-rule municipality from taking title to
electricity when acting as an aggregator for its citizens. TXU asserts that the Cities have not
preserved this attack on the Commission's misreading of the statute. TXU points to section
39.001(e) of the Utility Code, which provides that judicial review of competition rules shall be
commenced in this Court and conducted under the Administrative Procedure Act (APA), "except
as otherwise provided by this chapter." Tex. Util. Code Ann. § 39.001(e) (referring to Tex.
Gov't Code Ann. ch. 2001 (West 2000)). The Cities urge that under the APA, a challenge to a
rule's constitutionality may be brought for the first time on appeal. See R.R. Comm'n v. ARCO
Oil & Gas Co., 876 S.W.2d 473, 481 (Tex. App.--Austin 1994, writ denied). TXU responds that
the APA does not apply here, relying on language in section 39.001(e) that states "[j]udicial
review . . . shall be limited to the commission's rulemaking record." Tex. Util. Code Ann. §
39.001(e). TXU contends that the present case is distinguishable from a declaratory judgment
action under the APA, which requires developing evidence before the district court. See R.R.
Comm'n v. Home Transp. Co., 670 S.W.2d 319, 325 (Tex. App.--Austin 1984, no writ).

 The Cities offer a good reason for raising this argument for the first time in this
Court. There was no need to present this issue at the public hearing because initial drafts of Rule
25.111 allowed municipal aggregators to purchase electricity for resale to citizens. The version
of the rule that the Cities challenge on appeal, however, was submitted to the Commission for
adoption after the public hearing. The Utility Code makes no provision for motions for
reconsideration or rehearing. Unless the Cities are allowed to make the argument to this Court
in this suit for judicial review, they are forever foreclosed from doing so.

 The Cities argued to the Commission that it had misconstrued the deregulation
statutes. The Cities' contention that the Commission is improperly limiting home-rule
municipalities' powers is an extension of the Cities' argument that the Commission erroneously
interpreted the statute. To address this question of law we need not undertake an evidentiary
examination beyond that contained in the Commission's rulemaking record. We therefore decline
to adopt TXU's position and will consider whether the Commission's interpretation of the statute
is unreasonable on the ground that Rule 25.111 improperly limits the powers of a home-rule
municipality.


 B. Home-Rule Municipalities

 Article XI, section 5 of the Texas Constitution provides for home rule in cities with
populations of more than 5000. Tex. Const. art. XI, § 5 interp. commentary (West 1993). These
cities may adopt or amend their own charters by a majority vote of qualified voters and they may
levy and assess taxes. Id. art. XI, § 5. Before the Constitution was amended to provide for
home-rule cities, cities owed their existence and their powers to the legislature. Id. interp.
commentary. Now, a home-rule city has all the powers of the state not inconsistent with the
Constitution, the general laws, or the city's charter. Proctor v. Andrews, 972 S.W.2d 729, 733
(Tex. 1998); see also Tex. Const. art. XI, § 5. The legislature may limit these powers; however,
its intent to do so must appear with unmistakable clarity. Proctor, 972 S.W.2d at 733.

 The Cities urge that the Commission misinterpreted the Utility and Local
Government Codes, which they argue clearly permit home-rule municipalities to purchase
electricity, and exceeded its authority in promulgating a rule that prohibits Cities from purchasing
electricity when section 303.002 does not clearly prevent them from taking title to electricity. We
have already held that the Commission could reasonably infer from the statute that aggregators
generally are not entitled to purchase electricity, and that by granting municipalities the right to
purchase electricity only for use in public facilities, the legislature created a narrow exception to
the general rule. Because the distinctions found in sections 303.001 and 303.002 are clear, the
Commission did not exceed its authority by adopting Rule 25.111. Because we so hold, we
overrule the Cities' second point of error.


III. Public Policy

 The Cities contend that reading the statute to prevent municipalities from
purchasing electricity frustrates the legislature's intent to enhance a competitive electric power
industry. They assert that if municipalities may not purchase and resell electricity, customers
served by only one retail electric provider may in reality have no other choice and this result
undermines the legislature's focus on enhancing competition. See Tex. Util. Code Ann. §
39.001(a) ("electric services and their prices should be determined by customer choice and the
normal forces of competition"); id. § 39.101(a) (referring to Jan. 1, 2002, as the date "customer
choice" begins). On the other hand, the Cities maintain that if municipalities are allowed to
purchase and resell electricity to citizens, once deregulation is complete municipalities may
provide the only competition in markets served by one retail electric provider. Further, as non-profit corporations, municipalities may be able to compete more efficiently because they do not
have to factor profits into their prices to customers.

 We find the Cities' policy arguments persuasive; however, we do not determine
policy. We only consider whether the Commission's interpretation is reasonable under the statute.
See Gene Hamon Ford, 997 S.W.2d at 305. The Commission's policy need not be wise or
desirable; it need only reflect a legitimate position. See Bullock v. Hewlett-Packard Co., 628
S.W.2d 754, 756 (Tex. 1982). The Commission contends that the public interest is served by its
interpretation of the statute. First, it points out that the statute prevents conflicts of interest
between retail electric providers and aggregators, who represent buyers. See Tex. Util. Code
Ann. § 39.353(b). Second, the legislature provided rigorous requirements for certification of
retail electric providers, but a less rigorous registration process for aggregators. Retail electric
providers must demonstrate, for example, a certain level of financial and technical resources to
provide continuous and reliable electric service. Id. § 39.352(b)(1). Such requirements ensure
that the stability of the power grid is not compromised. 

 While the Cities present a convincing argument that allowing municipalities to sell
electricity to their citizens would enhance competition, the Commission's interpretation in Rule
25.111 is not clearly inconsistent with the statutory scheme. We hold that the Commission
properly exercised its discretion under the statute in promulgating Rule 25.111. We overrule the
Cities' third point of error.


CONCLUSION

 We hold that the Commission reasonably interpreted the electricity deregulation
statutes in promulgating Rule 25.111, which prohibits home-rule municipalities from purchasing
electricity to resell to their citizens. We, therefore, affirm the Commission's order adopting Rule
25.111.



 
 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: March 15, 2001

Publish

1. We note that this represents the first instance where judicial review of competitive rules
has been commenced directly to this Court under Utility Code section 39.001(e), and we shall
address that statute as it bears on our decision of the third point of error. See Tex. Util. Code
Ann. § 39.001(e) (West Supp. 2001).
2. The legislature did not deregulate transmission and distribution services, which involve
transportation of power, presumably to avoid duplication of the existing infrastructure. See id.
§ 39.001(a). Power generation and transmission and distribution are not at issue in this appeal.
3. The statutory scheme also provides for a municipally owned utility "owned, operated,
and controlled by a municipality or by a nonprofit corporation the directors of which are appointed
by one or more municipalities." Id. § 11.003(11). Municipally owned utilities are governed by
statutes entirely separate from those at issue here. Id. ch. 40. The Cities are aggregators, not
municipally owned utilities.
4. Both retail electric providers and aggregators must comply with customer protection
provisions, disclosure requirements, and marketing guidelines established by the statute and by
the Commission. Id. §§ 39.352(c), .353(c).
5. Under Rule 25.111, the only Class II aggregator that may take title to electricity is a
political subdivision aggregating for two or more political subdivisions. 16 Tex. Admin. Code
§ 25.111(d)(4)(B) (2001).
6. The Commission agrees that these sections distinguish private and public aggregators.
7. Section 303.001 corresponds with Rule 25.111(d)(4)(B), which allows political
subdivision corporations aggregating for political subdivisions to take title to electricity. 16 Tex.
Admin. Code § 25.111(d)(4)(B).
8. See 25 Tex. Reg. 6103, 6110 cmt. (2000).
9. Section 39.353 defines aggregators as persons. Tex. Util. Code Ann. § 39.353(b)
(West Supp. 2001). The Cities assert that because municipalities are not "persons" under the
Utility Code, see id. § 11.003(7), (14), these prohibitions do not apply to them. In promulgating
a rule to establish registration requirements for aggregators, it was appropriate for the
Commission to look to the section of the statute that generally addresses registration of
aggregators for guidance.

See Bullock v. Hewlett-Packard Co.
, 628
S.W.2d 754, 756 (Tex. 1982). The Commission contends that the public interest is served by its
interpretation of the statute. First, it points out that the statute prevents conflicts of interest
between retail electric providers and aggregators, who represent buyers. See Tex. Util. Code
Ann. § 39.353(b). Second, the legislature provided rigorous requirements for certification of
retail electric providers, but a less rigorous registration process for aggregators. Retail electric
providers must demonstrate, for example, a certain level of financial and technical resources to
provide continuous and reliable electric service. Id. § 39.352(b)(1). Such requirements ensure
that the stability of the power grid is not compromised. 

 While the Cities present a convincing argument that allowing municipalities to sell
electricity to their citizens would enhance competition, the Commission's interpretation in Rule
25.111 is not clearly inconsistent with the statutory scheme. We hold that the Commission
properly exercised its discretion under the statute in promulgating Rule 25.111. We overrule the
Cities' third point of error.


CONCLUSION

 We hold that the Commission reasonably interpreted the electricity deregulation
statutes in promulgating Rule 25.111, which prohibits home-rule municipalities from purchasing
electricity to resell to their citizens. We, therefore, affirm the Commission's order adopting Rule
25.111.



 
 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: March 15, 2001

Publish

1. We note that this represents the first instance where judicial review of competitive rules
has been commenced directly to this Court under Utility Code section 39.001(e), and we shall
address that statute as it bears on our decision of the third point of error. See Tex. Util. Code
Ann. § 39.001(e) (West Supp. 2001).
2. The legislature did not deregulate transmission and distribution services, which involve
transportation of power, presumably to avoid duplication of the existing infrastructure. See id.
§ 39.001(a). Power generation and transmission and distribution are not at issue in this appeal.
3. The statutory scheme also provides for a municipally owned utility "owned, operated,
and controlled by a municipality or by a nonprofit corporation the directors of which are appointed
by one or more municipalities." Id. § 11.003(11). Municipally owned utilities are governed by
statutes entirely separate from those at issue here. Id. ch. 40. The Cities are aggregators, not
municipally owned utilities.
4. Both retail electric providers and aggregators must comply with customer protection
provisions, disclosure requirements, and marketing guidelines established by the statute and by
the Commission. Id. §§ 39.352(c), .353(c).
5. Under Rule 25.111, the only Class II aggregator that may take title to electricity is a
political subdivision aggregating for two or more political subdivisions. 16 Tex. Admin. Code
§ 25.111(d)(4)(B) (2001).
6. The Commission agrees that these sections distinguish private and public aggregators.
7. Section 303.001 corresponds with Rule 25.111(d)(4)(B), which allows political
subdivision corporati